FLORENCE A. BOHN AND EDWARD A. BOHN, PLAINTIFFS-
RESPONDENTS, v. HUDSON & MANHATTAN RAILROAD
COMPANY, A CORPORATION OF THE STATE OF NEW
JERSEY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 23, 1954—Decided March 5, 1954.

Before Judges EASTWOOD, JAYNE and FRANCIS.

*Mr. Arthur J. Blake* argued the cause for appellant (*Messrs. Emory, Langan & Lamb*, attorneys).

*Mr. Hyman Tobin* argued the cause for respondents (*Mr. Raymond J. Cuddy*, attorney).

The opinion of the court was delivered by

JAYNE, J. A. D. The defendant maintains a station for its railroad passengers at Journal Square in Jersey City. On May 31, 1951 while descending the stairway to the platform below the plaintiff Florence A. Bohn slipped on the third step from the bottom and sustained bodily injuries for which she sought the recovery of compensatory damages in this action. Her husband, Edward A. Bohn, joined in the action *per quod.*

At the trial the plaintiffs prevailed and the jury awarded damages in the sum of $6,500 to Mrs. Bohn and in the amount of $1,500 to her husband. From the consonant judgment the defendant appeals.

The complaint alleged that the defendant was negligent in that (a) it caused improper construction of the stairway, (b) it failed properly to maintain the stairway, (c) it failed to inspect, (d) it was remiss in correcting a dangerous condition there conspicuously existing, and (e) it permitted the dangerous condition to continue for a lengthy period of time. The pretrial order added the plaintiffs' explanation that "the fall was occasioned by the fact that said step had attained a highly polished finish as a consequence of the wearing away of the carborundum strips."

The point of paramount significance introduced for our determination by the present appeal relates to the challenged propriety of the court's denial of the defendant's motion for a favorable judgment at the conclusion of the trial. The specific insistence of counsel for the defendant is that there was no proof of any actionable negligence for which the defendant could be lawfully held responsible.

The theme of the defendant's proposition seems to be that a common carrier with knowledge or constructive notice thereof may maintain a stairway at its station the treads and nosings of which are so *slippery* as to endanger the safety of its invitees and yet be exonerated by the law from liability for bodily injuries thereby occasioned where the hazardous slippery condition has resulted solely from the continued wear to which the steps have been subjected.

This exceptional principle is said to be peculiarly applicable where the insecure condition is merely slippery and is caused solely by continued use. Such an enunciation of the law is said to be implicit in the decisions rendered in *Garland v. Furst Store*, 93 *N. J. L.* 127 (*E. & A.* 1919); *Walker v. F. & W. Grand Five-Ten-Twenty-Five Stores*, 5 *N. J. Misc.* 541 (*Sup. Ct.* 1927), affirmed 104 *N. J. L.* 450 (*E. & A.* 1928); and *Costello v. Hudson and Manhattan R. R. Co.*, 7 *N. J. Misc.* 240 (*Sup. Ct.* 1929).

▮ In the field of the law of negligence, cited precedents must be discriminately examined in the light of the elements of factuality present in the particular case. Sometimes the bait hides the hook. Rarely in the family of analogous cases do you discover twins in all their salient factual features. The law exacts the exercise of reasonable care, but the legal term has a relative significance and in the abstract lacks that definitive quality which would supply a categorical solution of the question of liability in the particular and perhaps special circumstances of every case. *Niles v. Phillips Express Co.*, 118 *N. J. L.* 455 (*E. & A.* 1937).

▮ Human life is profuse in dangers, variant and distinguishable in degree, exposure, and environment. Where they are of human creation or maintenance and perpetuation to the injury of another, the law not only recognizes their source but also their measurements. Are they common, usual, and in the natural order of things, or are they extraordinary, unusual, and exceptional in the experience of reasonably vigilant, cautious, and prudent persons? So the processes of discriminative rationalization enter lavishly into the administration of our law of culpable and actionable negligence. Exemplification of such judicial action relative to the condition of floors and stairways is noticeable in *Abt v. Leeds & Lippincott Co.*, 109 *N. J. L.* 311 (*E. & A.* 1932); *Blessing v. Goodman*, 133 *N. J. L.* 608 (*E. & A.* 1946); *Blessing v. Goodman*, 137 *N. J. L.* 395 (*Sup. Ct.* 1948); *Overby v. Union Laundry Co.*, 28 *N. J. Super.* 100 (*App. Div.* 1953).

A standard is spoken of, that is, a model or example established in similar circumstances by contemporary custom or usage or practice. Prudence seems to be what contemporary society deems it to be. Thus distinctions are drawn between the usual and the unusual, the standard and the substandard, the normal and the subnormal or abnormal conditions. *Vide, Shipp v. Thirty-Second Street Corp.,* 130 *N. J. L.* 518, 521 (*E. & A.* 1943).

The element of foresight and the likelihood of jeopardizing the safety of another is also envisaged by the law of negligence. The measure of reasonable care is often said to be that which is commensurate with the demands of reasonable foresight for harm. Common experience responsive to the law of gravitation has revealed that persons are more likely perchance to lose their footing in descending a stairway than in passing over a level floor, hence the common use of hand railings and banisters. It is almost shallow to state that a given condition may be reasonably harmless in one location and extraordinarily precarious in another.

In negligence cases the margin between the conventional and the unconventional, the customary and the culpable, in their application to the alleged dereliction in the observance of the duty to exercise reasonable care is so feathery that the law in its pragmatical administration can only submit the determination of the distinction to the triers of the facts.

We shall speak of the evidence in the present case in its posture most favorable to the alleged cause of action of the plaintiffs. It disclosed that at some previous time the defendant had covered the steel treads of this stairway with a casing containing abrasive materials known as carborundum set in diamond shaped cavities in the casing. At the time of the occurrence of the mishap on May 31, 1951 the nosing and a portion of the tread extending $1\frac{1}{2}$ to $1\frac{3}{4}$ inches back from the face of it, upon which the user would normally place the ball of the foot, had as the result of wear become as smooth as a "sheet of glass," "like if you were in an ice

skating rink." These characterizations may be infused with exaggeration, which always weakens what is said, but they must in this review be respected as evidentiary descriptions.

The witnesses who employed the adjective "polished" did not mean to impart the meaning that the treads had been purposely made glossy or had been intentionally burnished. They obviously meant that the face of the treads had become smooth and slippery. But had they sustained through wear to the notice or knowledge of the defendant a smoothness to a degree in endangering excess of those customarily provided for public use?

We would be inclined, I think, to resolve this question pertaining to the inadequacy of the evidence in favor of the defendant were it not for the testimony of the defendant's road foreman who was experienced in such matters and who declared the test or criterion to be:

> "Why, you look at them and then you put your hand and rub on them and if there is a certain amount of resistance on your hand the stairway is safe. If you can slide it and it is polished the tread has to come out."

There was evidence that the face and outer edge of the tread was in the latter state. Additionally there was testimony generating the inference that the worn condition of the tread had existed for a period of seven or eight months immediately preceding the accident. The nature of the condition was made evident. *Stark v. Great Atlantic & Pacific Tea Co.*, 102 *N. J. L.* 694 (*E. & A.* 1926); *Francisco v. Miller*, 14 *N. J. Super.* 290, 298 (*App. Div.* 1951).

This was the existing state of the evidence when Judge Drewen was importuned to grant the motion of the defendant. He was fully aware of the fundamental duty of a person or corporation to exercise ordinary care to maintain his or its business premises in a reasonably suitable and safe condition for the contemplated use of invitees and to be reasonably circumspect and diligent in the observance of that legal obligation, and that the determination of the existence of negligence in a complex factual tenor of the

evidence is appropriately to be delegated to the jury. In such cases the court supplies the key and the jury determines whether it fits the lock.

While the evidence of the defendant's negligence was relatively slender, we do not feel justified in concluding that the action of the trial judge in declining to dismiss the action as a requirement of law was erroneous. *Gentile v. Public Service Coordinated Transport*, 12 *N. J. Super*. 45 (*App. Div*. 1951). The admission of the testimony of the plaintiffs' expert witness over objection grounded upon his alleged limited qualifications was not a radically mistaken exercise of judicial discretion. *Cf. Chmiel v. Yatsko*, 124 *N. J. L.* 508 (*Sup. Ct.* 1940); *Canonico v. Celanese Corp. of America*, 11 *N. J. Super.* 445, 455 (*App. Div*. 1951), certification denied, 7 *N. J.* 77 (1951).

We resolve that the judgment should be affirmed.