54 N.J. Super. 129 (1959)
148 A.2d 504
LILLIAN SHERWOOD, PLAINTIFF-RESPONDENT,
v.
MILES SHOES OF TOMS RIVER, INC., DEFENDANT-APPELLANT, AND PRINCETON CLEANING & FLOOR WAXING CORP., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1958.
Decided February 17, 1959.
*131 Before Judges PRICE, SCHETTINO and GAULKIN.
Mr. George Y. Schoch argued the cause for defendant-appellant (Mr. Irving H. Lewis, attorney).
Mr. Robert F. Novins argued the cause for plaintiff-respondent (Messrs. Novins, Novins & O'Connor, attorneys; Mr. William E. O'Connor, Jr., on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
Defendant Miles Shoes of Toms River, Inc. (hereinafter designated "Miles") seeks to reverse a judgment entered on a verdict of $25,000 in favor of plaintiff against it in a negligence action in the Superior Court, Law Division. Plaintiff, a customer of the Miles store, alleged that October 21, 1955 she suffered severe personal injuries as the result of a fall caused by slipping on wax on defendant's floor. In her complaint plaintiff sought recovery also against defendant Princeton Cleaning & Floor Waxing Corp. (hereinafter designated "Princeton") which, *132 by 6 P.M. the day before the accident occurred, had completed waxing the Miles store floor under contractual arrangement with Miles.
Near the close of the trial plaintiff negotiated a settlement with Princeton for $5,000, which fact was made known to the trial court but not to the jury. Under stipulation entered on the record with all counsel and the court participating, but out of the presence of the jury, it was agreed that the case should proceed as if no such settlement had been made but that regardless of the jury's verdict Princeton would pay plaintiff $5,000. The jury returned a verdict of no cause for action in favor of Princeton.
On this appeal Miles contends that the trial court erred: (a) in denying Miles' motion for involuntary dismissal at the end of plaintiff's case (R.R. 4:42-2(b)); (b) in its charge to the jury; (c) in its refusal to include in its charge certain requests submitted by Miles; and (d) in its refusal on Miles' motion for a new trial to direct, as then urged alternatively by Miles, that it was entitled to certain credits because of a stipulation made by respective counsel relating to the aforesaid settlement between plaintiff and defendant Princeton. Defendant Miles charges also that the verdict was against the weight of the evidence and so excessive as to warrant this court in setting aside the resultant judgment and granting a new trial. To evaluate the contentions urged by Miles for reversal it is necessary to review the evidence presented.
Defendant Miles, at the pretrial conference, admitted that plaintiff fell in its store but denied that it was negligent. It alleged that Princeton was not its agent but an independent contractor retained by it to clean and wax its floor. Defendant Princeton admitted that it waxed the Miles' floor but denied any negligence in so doing. Both defendants asserted affirmative defenses of contributory negligence and assumption of risk.
Plaintiff, who was 63 years of age at the time of the accident, testified that she entered the Miles' store and had proceeded about five feet when the heel of her right foot *133 "skidded across the floor" and hit her left foot. She fell backwards and fractured her right hip.
On direct examination plaintiff testified that after she fell she was assisted to a chair which was placed by an employee near the site of her fall and while there she saw that the floor was "newly waxed." She added: "* * * right about where I fell there was a skidmark from my shoe, and it seemed there was a little ridge there * * * there was a spot there where my heel made a skidmark. * * * and right by the skidmark you could see the little slight ridge that went through the skidmark." She described the floor as "in some places a little shinier than others." She stated that the area where the skid mark was located was "sort of dull and ripply looking" and stated that the skid mark was a foot to 16 inches in length.
Robert Spector, a former salesman and assistant manager for Miles, was called as a witness by plaintiff. He testified that he was waiting on a customer at the time plaintiff fell. He secured the chair, as aforesaid, and, with the help of another Miles employee, Grace Placente, assisted plaintiff to it. He stated on direct-examination that "the floor was very slippery and kind of waves" and, identifying where plaintiff had fallen, testified that it was "very slippery there; it seemed more so in that spot than anywhere else * * * slippery and uneven * * * there was a kind of a rub or gash, or whatever you call it in the wax where her heel had kind of slithered * * *." He further testified that on the morning of the accident he had observed that "the floor was very slippery" and that he "almost slipped a few times." On cross-examination by the attorney for Miles he added that the "wax was uneven" and "was in waves, uneven."
Mr. McHale the manager of Miles store testified that Spector was assistant manager but that he had no managerial duties except in McHale's absence; that he, McHale, saw plaintiff fall; that he examined the floor, that it was waxed evenly; that the waxing had been finished by 6 P.M. the previous evening; that there was no accumulation of wax *134 when he inspected it the evening prior to the fall and he observed a smooth polished surface; that he observed the floor the next morning both before and after plaintiff fell and there had been no change.
Grace Placente was called as a witness by defendant Miles. She had left Miles employ and at the time of the trial was employed by Spector. She testified that she saw plaintiff fall; that after plaintiff fell she did not inspect the floor area where the fall occurred but that she had noticed that morning that the floor was slippery and that she had slipped on it on "several occasions" that morning  later modified by her to say that she had slipped "a couple of times"; that she did not know whether the wax was applied evenly or unevenly; that she didn't know whether it was shiny or dull; that she did not pay any attention.
We address our attention initially to Miles' contention that the trial court erred in denying its motion for an involuntary dismissal at the end of plaintiff's case. Although defendant Miles made a motion for the entry of a judgment of dismissal at the end of the entire case, R.R. 4:51-1, it makes no mention of the denial of that motion on this appeal. However, on this review "all of the competent and relevant evidence introduced at the trial will be considered in determining whether the denial of the motion at the close of the plaintiff's case constitutes cause for reversal." Falk v. Unger, 33 N.J. Super. 589, 592 (App. Div. 1955). In determining the validity of the action of the trial court we give plaintiff the benefit of all of the evidence in her favor as well as all inferences favorable to her which can reasonably be drawn from the testimony adduced by both sides. Shimp v. Pennsylvania Railroad Co., 11 N.J. Super. 88, 91 (App. Div. 1951), affirmed 8 N.J. 1 (1951).
Defendant in challenging the trial court's ruling relies on Overby v. Union Laundry Co., 28 N.J. Super. 100 (App. Div. 1953), affirmed 14 N.J. 526 (1954), and Bosze v. Metropolitan Life Ins. Co., 1 N.J. 5, 9 (1948).
*135 In the Overby case, in which the evidence showed that defendant's floor had been waxed at some undisclosed time prior to appellant's mishap, we reviewed various cases bearing on this subject, 28 N.J. Super., at pages 106, 107.
After referring to the case of Abt v. Leeds & Lippincott Co., 109 N.J.L. 311 (E. & A. 1932), we said, 28 N.J. Super., at page 105, "proof of the mere circumstance that a person falls upon a floor that admittedly has been waxed does not warrant any inference that the mishap was caused by the proprietor's negligence." Then citing the Bosze case, supra, we stated, 28 N.J. Super., at page 105, that "to generate an inference of negligence in such cases, it must be made to appear that either in the nature or quantity of the substance used, or in the manner or time of its application, there was such a departure from the normal or generally accepted standards as to create a hazard of a tortious character for the lawful users of the premises."
We held in the Overby case (28 N.J. Super. at page 106) that the appropriate inquiry is whether the testimony would justify the inference that "(1) the wax had been applied to the floor in a manner so unconformable to the normal and generally accepted practices, (2) that a hazard of a tortious character was thereby created."
After reviewing the particular facts present in the Overby case and noting that "precedents are normally scarce in this field of judicial action" because of the dissimilarity of facts in cases cited as analogous, we held, 28 N.J. Super., at page 108, that the facts there present did not of themselves "create a logical and legitimate inference that the floor had been waxed in a manner so much at variance with the normal and generally accepted practices as negligently to imperil the safety of the customer."
Defendant contends that the Overby case is dispositive of the case at bar and that under its authority the plaintiff's case should have been dismissed by the trial court. We disagree. In the instant case there were present additional factual elements and inferences which might be drawn therefrom which differentiate the present case from the *136 Overby case. These additional factual elements are found in the testimony hereinabove outlined, including the element that the waxing of the floor had been completed at the time of the closing of the store the evening immediately preceding the morning of the accident; that Spector, defendant's assistant manager, had on that evening noticed that the floor was slippery; that on the morning of the accident and prior to its occurrence other customers had complained to him about the slippery condition of the floor and he had "told them to be careful walking"; plaintiff's testimony of the existence of a "little ridge"  "a ridge where the skidmark went through"; her description of the "ripply looking" nature of the floor; Spector's testimony that "the floor was very slippery and kind of waves," that it was "in waves, uneven,"; that the floor had "been slippery before, but that day it seemed excessively slippery"; that it seemed more slippery where plaintiff fell than elsewhere; that there was an "accumulation of wax"; that the employee, Grace Placente had slipped on the floor the morning of the accident.
We deem that the instant case renders singularly appropriate the following statement of Judge Jayne in the opinion for this court in Bohn v. Hudson & Manhattan Railroad Co., 30 N.J. Super. 89, 92 (App. Div. 1954), affirmed 16 N.J. 180 (1954):
"In the field of the law of negligence, cited precedents must be discriminately examined in the light of the elements of factuality present in the particular case. Sometimes the bait hides the hook. Rarely in the family of analogous cases do you discover twins in all their salient factual features. * * *"
In the case at bar on the facts and inferences therefrom the trial court's action in denying defendant's motion for an involuntary dismissal was justified.
We next consider defendant's contention that the trial court committed reversible error in its charge to the jury.
The court stated:
"There is a case in which a certain set of facts was determined; and the Court in that case held that this particular set of facts  the *137 particular set of facts in the Overby case was insufficient to show liability; and I shall quote it to you only for an example of a situation where the Court has determined that there was no liability, no negligence. This is not saying that the facts in the Overby case are the same as the facts in this particular case here. But you may find that they were the same; I don't know; that is up to you to determine the facts. But if you find the facts in the Sherwood case are the same as they were in the Overby case, of course, you would be entitled to arrive at the same conclusion. And this is what the facts in the Overby case were "
At that point plaintiff's counsel interrupted to protest against the court outlining the facts of the Overby case, and Princeton's counsel objected to the "modification and explanation given by the court in reference to this charge." The judge told the jury to disregard what he had thus far said and stated that his instructions were as follows:
"The question is, what proof will establish negligence? Well, in the Overby case the Court held that mere proof that the floor had been waxed, that the edges adjacent to the baseboard and counter appeared to have a dull finish more incompletely polished than the middle, that the customer carrying in front of her a bundle of soiled sheets and shirts, slipped and fell on the floor elsewhere than along the baseboard or near the counter, that in slipping her shoe left a skidmark discernable on the surface of the floor, beside which it was possible by means of the deliberate use of the side of the sole of the shoe to abrade some particles or quantity, perhaps infinitesmal, of wax, does not of itself create a logical and legitimate inference that the floor had been waxed in a manner so much at a variance with the normal and generally accepted practices as negligently to imperil the safety of the customer.
Now, I am not telling you for sure that the facts are the same, but if they were the same, why, of course, you would use that case as a guide."
The court then continued with its instruction to the jury on other phases of the law which it considered applicable and at the conclusion counsel for defendant Miles took "exception" to that portion of the court's charge and plaintiff's counsel likewise again "excepted" to it. The court made no change therein.
This portion of the court's charge constitutes reversible error. Its harm is apparent. The charge by the court to the jurors that if the facts in the Overby case "were the *138 same, why, of course, you would use that case as a guide" would justify the jury in concluding that if it did not find the facts to be the same as in the Overby case it could reject that case as a guide and be justified in returning a verdict for plaintiff.
Plaintiff asserts that this portion of the court's charge should not be deemed prejudicial because defendant has not shown that the reading from the opinion in the Overby case misled the jury, citing 53 Am. Jur., Trial, § 543. This contention has no application to the case here presented because the trial judge in the case before us did far more than read from the Overby opinion. He directed the jury to compare the facts therein referred to by him with the evidence before it in the instant case. Plaintiff's counsel asserts in his brief that Miles must show that the jury was "in fact misled and that such misleading instruction, if it be so, resulted in the denial of substantial justice to the defendant"; that Miles' contention "ignores the more accurate rationale that the jury upon its finding that the respective facts were dissimilar, completely disregarded the instructions relating to Overby." The potential harmful nature of this portion of the court's charge cannot be disposed of in such summary fashion.
What could the jury do in the instant case in obedience to the trial court's instruction other than obey its mandate which was to use the Overby case as a guide if it found that the facts "were the same"? If it did not so find, can it be assumed that it then understood that it should simply discard the case as a guide or is it not more logical that it should then deem it imperative to find for plaintiff because of the factual dissimilarity existing?
In his protest against the trial court's charge with reference to the Overby case plaintiff's counsel said: "I don't believe the facts of any particular case would constitute the law. The question is, what does constitute a cause of action? If we have made that out, the jury is to find the facts. But to set forth a state of facts in a case other than the one we have here I believe would be error * * *." Although *139 it is arguable that the trial court's reference to the facts of the Overby case might in one aspect be considered more favorable to defendant Miles than to plaintiff it is equally arguable that Miles' liability or freedom therefrom should not be resolved by the jury's conception of the applicability of the facts of the Overby case. Miles' counsel objected to the charge. His objection, and that of plaintiff's counsel, were well taken and reflected the inherent probability for harm which the charge harbored.
We have emphasized that the prejudicial nature of the criticized portion of the charge in the case at bar is found in the court's direction to the jury to compare the facts of the Overby case with those of the instant case and to be guided by the result of such comparison.
Moreover we express the view that, even though no suggested comparison between the facts of a case on trial and the facts reflected in an appellate court opinion be incorporated in a court's charge, the practice of a trial judge "reading to the jury from the opinions of an appellate court in other cases" should be avoided. 53 Am. Jur., Trial, § 543. As indicated by that authority, this does not preclude a judge, "desiring to adopt an opinion as law for the purpose of instruction," from delivering applicable portions thereof "as the court's own statement," being careful also "that the propositions and definitions adopted should be adapted to the facts of the case submitted to the jury."
Defendant Miles further asserts that the trial court erred in refusing to credit it with one-half of the amount of the judgment rendered or, in the alternative, to credit it with $5,000 the amount for which Princeton settled with plaintiff under the circumstances hereinabove set forth. The proposed settlement with Princeton by which plaintiff was to receive $5,000 from it regardless of the outcome of the trial was part of a stipulation agreed to by all counsel and expressed in a colloquy with the court in the absence of the jury. This stipulation involved: (a) the ultimate dismissal of the case against Princeton by plaintiff; (b) the continuance of the trial as against both defendants as if *140 no settlement with Princeton were being made; and (c) that Miles liability to plaintiff would be "to the extent of fifty per cent of any judgment rendered against both defendants" or for the total amount of any judgment rendered against it only.
The fact that the judgment herein must be set aside and a new trial granted because of the aforesaid error in the charge of the trial court renders unnecessary that we determine the propriety of the trial court's order denying Miles' application for a credit of $12,500 or an alternative credit of $5,000 against such judgment. However we deem it appropriate to indicate that at the new trial in which Miles will be the only defendant, it will have the right, if the settlement between plaintiff and defendant Princeton has been consummated, to show what sum has been received by plaintiff from Princeton on account of her damage claim. To this end Miles may amend its answer to reflect such payment, if it be a fact, and may assert it at the further pretrial conference and in the resultant pretrial order. R.R. 4:29-7.
In view of the necessity for a new trial it becomes unnecessary to discuss other alleged errors in the charge of the trial court or to resolve the contention of Miles that the verdict was against the weight of the evidence and excessive.
For the reasons herein expressed the aforesaid judgment is set aside and a new trial granted as to defendant Miles, costs to abide the outcome.