253 N.J. Super. 299 (1992)
601 A.2d 766
LINDA GOODMAN, PLAINTIFF-RESPONDENT,
v.
FAIRLAWN GARDEN ASSOCIATES, INC., T/A FAIRLAWN GARDEN APARTMENTS, AND SHERWOOD MANAGEMENT, INC., DEFENDANTS-APPELLANTS. AND LINDA GOODMAN, PLAINTIFF,
v.
MARK RENELT AND STATE OF NEW JERSEY, DEPARTMENT OF CORRECTIONS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1991.
Decided January 28, 1992.
*300 Before Judges ANTELL, LONG and BAIME.
William J. Pollinger argued the cause for appellant (Pollinger & Fearns, attorneys; William J. Pollinger, of counsel and on the brief).
Jerrold Kamensky argued the cause for respondent (Philip L. Kantor, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
The question presented on this appeal is whether it is the plaintiff or the defendants, in a suit alleging personal injury and aggravation thereof as the result of successive accidents, who must bear the burden of proving how plaintiff's damages should be allocated among the defendants.
Plaintiff injured her neck, lower and middle back, left shoulder, right ribs and left upper chest when she fell on the property of defendant Fairlawn Garden Associates, Inc. (hereinafter "Fairlawn"), on January 24, 1987. On June 30, 1987, her automobile was struck in the rear by defendant Mark A. Renelt, who was driving a state-owned vehicle. That accident injured her legs, neck, lower back, left arm and shoulder. She also experienced abdominal pain, dizziness, drainage from the right ear and ringing in her ears. A CAT Scan indicated the presence of a bulging disc in her lumbar spine. On June 18, 1988, she suffered a third accident in Pennsylvania when another vehicle struck the rear of a car in which she was a passenger, hurting her left knee, lower back, left arm and neck. Her complaints included soft tissue injury, a bulging lumbar disc, post-traumatic osteoarthritis and chronic pain.
*301 Separate suits were commenced against Fairlawn and Renelt/State of New Jersey for negligence, and these were consolidated for trial on the issue of damages. We are not told what action was taken with respect to the third accident. The parties stipulated to the defendants' liability and also to plaintiff's comparative negligence of 7.5%. During the trial, the jury heard several expert witnesses testify to plaintiff's injuries, their permanency, and their allocability amongst the tortfeasors. Prior to the jury charge, however, defendants Mark Renelt and the State of New Jersey settled with plaintiff and were dismissed as parties to the action.
After being instructed by the court that the burden of proving allocation of damages rested on the defendants, the jury returned an award in favor of plaintiff against Fairlawn in the amount of $112,091.67. It also awarded $53,776.64 against Renelt and the State of New Jersey. An additional non-apportioned $18,499.16 was also awarded. The trial court ordered Fairlawn to pay the full unapportioned amount awarded for pain and suffering and 50% of the remaining unapportioned award. With allowance of interest and a reduction for plaintiff's stipulated comparative negligence, the total judgment entered against Fairlawn is in the amount of $134,222.44.
Relying upon Tisdale v. Fields, 183 N.J. Super. 8, 443 A.2d 211 (App.Div. 1982), Fairlawn argues on appeal that the trial court erred in instructing the jury that the burden of proving allocation of damages shifted to the defendants. In Tisdale, plaintiff, who had had "several prior accidents," id., at 10, 443 A.2d 211, sued defendant, who was the last of successive tortfeasors, for the aggravation of her pre-existing injuries. Asserting that the damage award was inadequate, she appealed on the ground that the trial judge erred in failing "to require the burden of proof to be shifted to the defendants to apportion plaintiff's injuries based on her pre-existing conditions." Ibid. In that case, which is materially analogous to this, we held that the jury had been correctly instructed not to *302 award damages solely related to any pre-existing condition, and that plaintiff bore the burden of proof as to how damages should be allocated. Accordingly, we affirmed the judgment presented for review. In our view, that determination governs the case presented, and the trial court herein erred in charging the jury as it did. Our reasons are stated in the following discussion.
To support her contention that the burden of proving allocation of damages rests on defendants, plaintiff relies on Fosgate v. Corona, 66 N.J. 268, 330 A.2d 355 (1974), Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 568 A.2d 1196 (App.Div. 1989), and Bendar v. Rosen, 247 N.J. Super. 219, 588 A.2d 1264 (App.Div. 1991). These decisions are inapposite to the case at hand.
Fosgate was a suit for medical malpractice in which plaintiff contended she had been injured by defendant's failure to recognize that she was suffering from tuberculosis. Despite defendant's "treatments" over a period of six years, the illness was not discovered until plaintiff was taken to a hospital after an accident. By that time it was "far advanced." 66 N.J. at 270, 330 A.2d 355. Her complaint on appeal was that the trial court refused to instruct the jury that defendant was answerable for the full extent of her ultimate disability if they found it resulted from the "concurrent effect of both the plaintiff's prior condition and the defendant's negligence superimposed upon it." Id. at 271, 330 A.2d 355. Instead, the jury was instructed that it could not award damages for any disability attributable to a pre-existing illness or condition. Id. at 272, 330 A.2d 355. The Supreme Court reversed, holding that under the facts presented
the burden of proof should be shifted to the culpable defendant who should be held responsible for all damages unless he can demonstrate that the damages for which he is responsible are capable of some reasonable apportionment and what those damages are. [Id. at 272-73, 330 A.2d 355]
The parties disagree as to whether that holding is limited to cases where the aggravated injury is caused by medical malpractice. *303 Plaintiff's argument that the foregoing proposition was equally intended for application outside the medical malpractice setting focuses upon the Court's statement that
courts are now taking the view that in a situation where the malpractice or other tortious act aggravates a preexisting disease or condition, the innocent plaintiff should not be required to establish what expenses, pain, suffering, disability or impairment are attributable solely to the malpractice or tortious act. ... [Id. at 272, 330 A.2d 355] [Emphasis supplied].
We read this passage as only an observation upon what the Court discerned as a then current trend in other courts. It does not constitute a holding that the burden of proving apportionment of damages in cases other than medical malpractice rests on defendants where, as here, the suit is based upon the claimed worsening of an earlier injury by a later one, as distinguished from a single injury caused by concurrent negligence. The narrow import of that opinion was stated a few lines later in the following language: "We think the principle a sound one in the circumstance here presented of malpractice in the treatment of a preexisting disease or condition." (emphasis supplied) Id. at 273, 330 A.2d 355.
Tisdale specifically declined to extend the applicability of Fosgate to negligence cases other than malpractice, Tisdale, 183 N.J. Super. at 10-11, 443 A.2d 211, explaining that "[i]n the usual malpractice case a physician is in a much better position with respect to the proofs to express an opinion on causal relationship." Id. at 10, 443 A.2d 211. The following language in Ostrowski v. Azzara, 111 N.J. 429, 545 A.2d 148 (1988), fortifies the view that Fosgate was intended for application only in medical malpractice cases.
In the field of professional health care, given the difficulty of apportionment, sound public policy requires that the professional bear the burden of demonstrating the proper segregation of damages in the aggravation context. Fosgate v. Corona, 66 N.J. at 272-73 [, 330 A.2d 355]. The same policy should apply to mitigation of damages. But see Tisdale v. Fields, 183 N.J. Super. 8, [, 443 A.2d 211] (App.Div. 1982) (for discussion of policy in non-medical malpractice context.) [Ostrowski, 111 N.J. at 443-444, 545 A.2d 148.]
Also see Scafidi v. Seiler, 119 N.J. 93, 110, 574 A.2d 398 (1990), where the Court observed that the Fosgate principle was developed *304 "in the context of a claim of medical malpractice involving treatment of a preexistent disease."
Sholtis v. American Cyanimid Co., supra, dealt with asbestosis claims against a number of asbestos product manufacturers. Although they had been exposed in varying degrees to the different products marketed by the separate defendants, plaintiffs' injuries allegedly resulted from defendants' concurrent negligence. Sholtis, 238 N.J. Super. at 26-27, 568 A.2d 1196. Thus, plaintiffs' claims were ones for which joint liability is ordinarily mandated. Daniel v. State, Dept. of Transp., 239 N.J. Super. 563, 595, 271 A.2d 1329 (App.Div. 1990), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990); Post v. Manitowoc Eng. Corp., 88 N.J. Super. 199, 206-207, 211 A.2d 386 (App.Div. 1965); Peer v. Newark, 71 N.J. Super. 12, 28, 176 A.2d 249 (App.Div. 1961). Recognizing the practical impossibility of proving which defendant was responsible for the particular asbestos fibres that caused the injuries, the court focused upon Fosgate's motivating concern and obligated the manufacturers to prove the allocability of damages and what that allocation should be. Sholtis, 238 N.J. Super. at 28, 568 A.2d 1196. In this way allowance was made for the fact that the indivisible injury sustained by each plaintiff was the product of a gradual process contributed to by multiple parties.[1]
In Bendar v. Rosen, supra, plaintiff became pregnant following a negligently performed tubal ligation. She was thereafter hurt in an automobile accident and taken to a hospital where, unaware of her pregnancy, she was x-rayed to determine the extent of her injuries. Ten days later, when her condition was discovered, plaintiff underwent an abortion because she feared that the fetus might have been harmed by the x-rays. Suit was then brought for the resulting damages. As in Sholtis, the *305 court applied the Fosgate rule on the premise that the combined negligence of the doctor and the automobile tortfeasor were both causally related to the abortion and plaintiff's consequent damages in such a way that their relative degrees of responsibility could not be differentiated.
We conclude that where a plaintiff seeks recovery for an injury and aggravation thereof in a suit against multiple tortfeasors for successive accidents, the burden of proving apportionment of damages rests upon the plaintiff. Where the suit seeks recovery for an indivisible injury caused by a defendant's negligence concurrently with other causative factors, as in Sholtis and Bendar, the burden rests on defendant. Recognizing that the two situations are not always easily distinguished (as, for example, in Fosgate), "[t]he critical issue that should ... determine[] the applicability of the Fosgate charge is whether defendant's liability for damages is capable of any apportionment." Scafidi v. Seiler, 119 N.J. 93, 111, 574 A.2d 398 (1990). Although, as we have said, Fosgate does not govern herein, its rationale in placing the burden on defendant "because of the practical difficulty in separating that part of the harm caused by the malpractice from the preexisting disease and its normal consequences," Fosgate, 66 N.J. at 272, 330 A.2d 355, furnishes the key to understanding for apportionment purposes the distinction between an injury which aggravates a preexisting condition and one which is the product of concurrent causative factors.[2]
Apart from serving to protect implicated defendants against liability for injuries they did not cause, the logic of our decision lies in the fact that in the ordinary case of an aggravated preexisting injury only the plaintiff can know and describe the extent of the preexisting disability and the extent to which it has been exacerbated. Whatever knowledge a defendant may *306 have about these crucial facts it must learn from the plaintiff. In the case of a unitary injury caused by concurrent negligence, the plaintiff is naturally relieved of this burden because of the joint liability which is the usual concomitant of concurrent negligence.
The significance we place on the distinction between an aggravated injury and one caused by concurrent negligence is even more valid in this case than in Tisdale v. Fields, supra, where the defendant was the most recent of successive tortfeasors. Fairlawn was the first of three alleged tortfeasors, and it was only the second and third tortfeasors who could logically be charged with aggravating the injury attributed to Fairlawn. The unfair effect, therefore, of requiring Fairlawn to shoulder the burden of proving the proper allocation of damages is to expose it to liability, not only for the injuries which it caused, but also for those caused by the later tortfeasors. The requirements of justice herein are distinguishable from those considered in Ciluffo v. Middlesex General Hospital, 146 N.J. Super. 476, 482, 370 A.2d 57 (App.Div. 1977), for example, where we observed that an initial tortfeasor is potentially liable for all the natural and proximate injuries that flow from the initial tort, "including the consequences of medical treatment for the injuries caused by his wrong." In this case, unlike in Ciluffo, the injuries received in the later accidents were in no sense related to the first.
The Supreme Court of Wyoming was confronted with materially identical facts in Hashimoto v. Marathon Pipeline Co., 767 P.2d 158 (Wyo. 1989). There, as here, plaintiff argued that in a successive accident case the initial tortfeasors had the burden to apportion the damages for which they were responsible or, if apportionment were not possible, to accept liability for all the damages. In rejecting that contention the court made the following pertinent observations:
We are cognizant, as was the Bruckman court [Bruckman v. Pena, 29 Colo. App. 357, 487 P.2d 566 (1971)], of the principle that when a tortfeasor injures someone with a pre-existing condition, he is liable for the total damage *307 when no apportionment between the pre-existing condition and the damage defendant caused can be made. Thus, the defendant must take his victim as he finds him. See Alexander v. White, 488 P.2d 1120, 1123 (Colo. App. 1971), where the Bruckman situation is distinguished from a pre-existing condition scenario.
[B]ut, it is quite another thing to say that a tortfeasor is liable, not only for the damage which he caused, but also for injuries subsequently suffered by the injured person.

Bruckman, 487 P.2d at 568. [Hashimoto, 767 P.2d at 161.]
The court's error in requiring Fairlawn to prove the allocation of damages cannot be disregarded as harmless. See R. 2:10-2. Fairlawn had introduced no evidence whatever as to how the damages should be allocated. The conclusion is inescapable that the jury took a severe view of Fairlawn's apparent default in responsibility and accepted uncritically plaintiff's proofs as to this issue.
Fairlawn complains that the court erred in failing to allocate the damages resulting from the third accident. The point was not raised below and will not be considered now. We call counsel's attention to the fact that R. 2:6-2(a)(1) makes it "mandatory that any point not presented below be so indicated by including in parenthesis a statement to that effect in the point heading" within the table of contents.
Reversed and remanded for a new trial in accordance with this opinion.
NOTES
[1] As the court said in Karjala v. Johns-Manville Products Corp., 523 F.2d 155, 160 (8th Cir.1975), "there is rarely a magic moment when one exposed to asbestos can be said to have contracted asbestosis; the exposure is more in the nature of a continuing tort."
[2] See Prosser, The Law of Torts, § 52, 313-23 (4th ed. 1971), for suggested analyses of hypothetical apportionment problems.