268 N.J. Super. 152 (1993)
632 A.2d 1264
JAMES E. BLANKS, PLAINTIFF-APPELLANT,
v.
ROBERT MURPHY, GERALD LOVE AND UNIVERSAL AUTOMOTIVE DISTRIBUTORS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 21, 1993.
Decided November 3, 1993.
*155 Before Judges DREIER, BROCHIN and KLEINER.
Drazin & Warshaw, attorneys for appellant (Brian D. Drazin, of counsel; Thomas F. Shebell, III, on the brief).
Hoagland, Longo, Oropollo & Moran, attorneys for respondents (John C. Simons, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiff James E. Blanks sued defendants Robert Murphy, Gerald Love, and Universal Automotive Distributors, Inc. for personal injuries which allegedly resulted from an automobile accident. Liability was conceded. At trial, plaintiff claimed that the accident had caused injuries to his neck, shoulder and back. However, the jury could have found from the evidence that his complaints were in large part the result of other back injuries which he had sustained both before and after the accident which was the subject of the law suit. The jury returned a verdict in *156 plaintiff's favor for $3,000. Plaintiff's motion for an additur or a new trial was denied.
Plaintiff has appealed. He alleges that the trial court committed plain error by omitting the word "solely" from what was otherwise the model charge on the subject of apportioning responsibility for preexisting injuries; that it committed plain error by failing to place the burden on defendants to show that his injuries were not the result of the accident for which they were responsible; that the $3,000 verdict was so inadequate as to be a miscarriage of justice; and that hearsay evidence contained in his hospital records was erroneously admitted over his objection.
At trial, the judge instructed the jury as follows:
Now, if a plaintiff who is awarded a verdict had a preexisting illness or injury he is entitled to an award of damages only if the jury finds that the illness or injury was aggravated or made more severe as a result of this accident and only to the extent of such aggravation.
In fixing your award of damages, for pain, suffering, disability and impairment you may allow the plaintiff such damages as will fairly and reasonably compensate him for injuries sustained in this accident, including any increased pain, suffering, disability and impairment, because of aggravation of a preexisting illness or injury.

You may not award damages in this lawsuit for pain, suffering, disability or impairment attributable to a preexisting illness or injury. I also charge you that if such preexisting illness or injury did not itself involve pain, suffering, disability or impairment but combined with the injuries sustained in this accident, to produce pain, suffering, disability or impairment, you may award damages to the full extent of such pain, suffering, disability and impairment. [Emphasis added.]
If you find the plaintiff's present condition results in part from a vulnerability or predisposition or a latent disease or weakness without symptoms, his damages would be based upon the present condition of pain, suffering, disability and impairment in full even though you may speculate that an individual without such predisposition or latent condition would have experienced less pain, suffering, disability and impairment.
The charge given mirrors Civil Model Jury Charge 6.10(G)(1) with the exception of the word "solely," which was omitted from the charge read to the jury. The pertinent sentence of the model jury charge reads: "You may not award damages in this lawsuit for pain, suffering, disability or impairment attributable solely to a preexisting illness or injury" (emphasis added). Plaintiff's counsel did not object to the instruction at trial. See R. 1:7-2. Had a *157 timely objection been made, the court could have given a curative instruction or corrected charge. Dafler v. Raymark Indus., Inc., 259 N.J. Super. 17, 37, 611 A.2d 136 (App.Div. 1992), aff'd o.b., 132 N.J. 96, 622 A.2d 1305 (1993).
Reading the charge given as a whole, the first two paragraphs clearly explain that any award for a preexisting illness or injury must be for aggravation or increase of pain, suffering, disability or impairment which has resulted from the accident at issue. Although the first sentence of the third paragraph of the court's charge does not include the word "solely," the next sentence instructs the jury that it may award damages to the full extent of pain, suffering, disability and impairment which resulted from the combined effect of preexisting illness and injuries sustained in the automobile collision. Because the overall effect of the charge informed the jury accurately that they might award damages for a preexisting illness or injury to the extent of any aggravation or increase, the judge's omission of the word "solely" did not possess a clear capacity to bring about an unjust result. We therefore reject plaintiff's argument on this issue.
We next consider plaintiff's challenge to the trial court's jury charge with respect to the burden of proof for apportioning damages. Plaintiff argues (1) that Fosgate v. Corona, 66 N.J. 268, 272-73, 330 A.2d 355 (1974), holds that the defendants in a medical malpractice case have the burden of proving which of plaintiff's conditions were caused by events for which they were not responsible, and (2) that Bendar v. Rosen, 247 N.J. Super. 219, 588 A.2d 1264 (App.Div. 1991), and Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 568 A.2d 1196 (App.Div. 1989), extended that holding to ordinary negligence cases.
In Fosgate, supra, plaintiff, Mary Fosgate, brought a malpractice action against her doctor for failure to diagnose her tuberculosis. 66 N.J. at 270, 330 A.2d 355. Despite the treatments which she received over a period of six years from defendant, her tuberculosis was not discovered until she was hospitalized after an automobile accident. Ibid. By that time, her condition was far *158 advanced. Ibid. The jury returned a verdict of $10,000 to plaintiff. Id. at 271, 330 A.2d 355. Following entry of judgment, plaintiff moved for a new trial on the issue of damages. Ibid. The trial court agreed that the award was low but denied the motion because the jury "obviously" was not satisfied that defendant was liable or that defendant proximately caused all the damages. Ibid. On appeal, plaintiff complained that the trial court, which had instructed the jury in accordance with the model charge, erred in refusing to charge that defendant was liable for the full extent of plaintiff's ultimate disability if the jury found that plaintiff's suffering and disability resulted from the "concurrent effect of both the plaintiff's prior condition and the defendant's negligence." Ibid. The Appellate Division affirmed in an unreported opinion because it found that the jury charge given below was correct. Id. at 272, 330 A.2d 355. The Supreme Court granted certification and reversed, holding that:
... the charge as given was a correct statement of the general legal principle involved ..., but was inadequate in the circumstances of this case. Where the malpractice involves treatment of a pre-existing disease, the assessment of damages poses a problem because of the practical difficulty in separating that part of the harm caused by the malpractice from the pre-existing disease and its normal consequences. Because of this, courts are now taking the view that in a situation where the malpractice or other tortious act aggravates a pre-existing disease or condition, the innocent plaintiff should not be required to establish what expenses, pain, suffering, disability or impairment are attributable solely to the malpractice or tortious act, but that the burden of proof should be shifted to the culpable defendant who should be held responsible for all damages unless he can demonstrate that the damages for which he is responsible are capable of some reasonable apportionment and what those damages are. [Emphasis added.]

[Id. at 272-73, 330 A.2d 355 (citations omitted).]
In Tisdale v. Fields, 183 N.J. Super. 8, 9-10, 443 A.2d 211 (App.Div. 1982), this court considered the applicability of Fosgate's burden-shifting rule to a personal injury case that did not involve medical malpractice. The plaintiff in Tisdale had been injured while she was a passenger on a bus. Id. at 9, 443 A.2d 211. She claimed that the bus accident had aggravated preexisting conditions caused by several prior accidents. Id. at 10, 443 A.2d 211. Dissatisfied with a modest jury verdict in her favor, she appealed, *159 contending that the trial judge should have shifted the burden of proof to defendants to segregate her compensable injuries from those which were the results of prior events. Ibid. We disagreed. We held that, "[i]n the usual negligence case"  of which Tisdale was an instance  "plaintiff has the burden of establishing all the elements of his cause of action, including damages," and we observed, "[w]e do not think that Fosgate has changed the usual rule in every negligence case." Id. at 10-11, 443 A.2d 211. To the same effect, see Goodman v. Fairlawn Garden Assoc., 253 N.J. Super. 299, 305, 601 A.2d 766 (App.Div.) (plaintiff who suffered successive injuries has the burden of apportioning damages), certif. denied, 130 N.J. 7, 611 A.2d 647 (1992).
In Sholtis, supra, 238 N.J. Super. at 12-13, 568 A.2d 1196, persons injured by exposure to asbestos, or their personal representatives, sued a number of asbestos product manufacturers. The injured employees had been exposed to asbestos over a long period of time. Id. at 14-16, 568 A.2d 1196. It was impossible to ascertain which defendant had produced or distributed the product that caused the plaintiffs' injuries or what proportion of plaintiffs' total exposure to asbestos products each of the defendants was responsible for. Ibid. We held that plaintiffs could establish their prima facie cases by producing "evidence from which a fact-finder, after assessing the proof of frequency and intensity of plaintiff's contacts with a particular manufacturer's friable asbestos, could reasonably infer toxic exposure." Id. at 29, 568 A.2d 1196. On the issue of shifting the burden of proof, we said, "[i]f any or all of the remaining defendants can be found to have supplied substantial shares of the American Cyanamid asbestos, any proof allowing a reduction from joint and several responsibility would come from these defendants' (not plaintiffs') urging that their respective shares should be reduced under principles of comparative negligence (N.J.S.A. 2A:15-5.1 et seq.)." Id. at 30, 568 A.2d 1196 (footnote omitted).
In Bendar v. Rosen, supra, the plaintiff was the victim of three separate sets of negligent acts. 247 N.J. Super. at 224-25, 588 *160 A.2d 1264. The negligence of two automobile drivers caused plaintiff to suffer an orthopedic injury which required x-rays. Id. at 225, 588 A.2d 1264. The person who took the x-rays negligently omitted to protect her with a pelvic shield. Ibid. The physician who had previously performed a tubal ligation had negligently failed to close one fallopian tube; as a result, plaintiff was pregnant when she was x-rayed and she underwent an abortion because of the probable detrimental effect of the x-rays on the fetus. Id. at 225-26, 588 A.2d 1264. By answers to special interrogatories, the jury determined that the drivers' negligence, which had caused the injuries necessitating the x-rays, and the negligence of the surgeon who had performed the tubal ligation, were the proximate causes of the termination of plaintiff's pregnancy. Id. at 229, 588 A.2d 1264. In accordance with the trial judge's instructions, they awarded her damages against the drivers and the surgeon without apportionment. Ibid. The automobile drivers contended on appeal that they were entitled to have the jury apportion damages for termination of the pregnancy between themselves and the surgeon. Id. at 231, 588 A.2d 1264. We agreed and by analogy with Fosgate, supra, ruled that "where there is an aggravation of a pre-existing condition by `malpractice or other tortious act' the innocent plaintiff is not required to establish what portions of the eventual damages are attributable to each act." Id. at 232, 588 A.2d 1264 (quoting Fosgate, 66 N.J. at 272-73, 330 A.2d 355). We also held, quoting Fosgate, that "`the burden of proof should be shifted to the culpable defendant who should be held responsible for all damages unless he can demonstrate that the damages for which he is responsible are capable of some reasonable apportionment and what those damages are.'" Bendar, supra, 247 N.J. Super. at 233, 588 A.2d 1264 (quoting Fosgate, 66 N.J. at 272-73, 330 A.2d 355).
This application of the Fosgate rule to Bendar related to the apportionment of damages for the termination of pregnancy among the surgeon and the drivers, all of whom were defendants. Bendar, supra, 247 N.J. Super. at 234, 588 A.2d 1264. Absent contrary proof, the two negligent drivers, together, would be liable *161 for one-half of the damages for termination of pregnancy and the surgeon for the other half. But the driver and the surgeon should, we held, each have the opportunity to bear the burden of proving that either the drivers or the surgeon should be liable for less than half. Id. at 234-35, 588 A.2d 1264. Since neither the surgeon's malpractice nor the drivers' negligent driving would, by itself, have resulted in plaintiff's having to terminate a pregnancy, the jury was required to compare the relative responsibility of the drivers on the one hand and the surgeon on the other. Ibid. Because the controversy between those defendants about the apportionment of damages did not directly involve plaintiff, the rule which we applied in Bendar is largely irrelevant to the present case.
Fosgate, Tisdale, Goodman and Sholtis, however, mark out the rule which is applicable to this case. In Fosgate and Sholtis, a particular characteristic of the case required the defendants, in the interest of justice, to suffer the consequences of an inability to disprove their responsibility for some or all of the plaintiffs' injuries. The defendant in Fosgate, because he was the treating physician, was in a substantially better position than the plaintiffs to offer proof "separating that part of the harm caused by the malpractice from the preexisting disease and its normal consequences." Fosgate, supra, 66 N.J. at 272, 330 A.2d 355. The rule enunciated in that case was not limited to medical malpractice cases; it extends to all cases to which its rationale applies, i.e., where defendants have vastly greater access than plaintiffs to crucial proofs.[1] The special feature of Sholtis was that if the burden were not shifted to the defendants, asbestos plaintiffs who were indisputably injured would never be able to recover. Tisdale and Goodman, on the other hand, lacked any characteristic that would warrant shifting the ordinary burden of apportioning damages. *162 In both of those cases, the plaintiff was in the best position to gather and present the evidence, through her own testimony and that of her experts, to show what part of the conditions of which she complained had been caused by the accident for which defendant was responsible. Justice therefore required that in those cases plaintiff bear the burden on the apportionment issue.
What was true in Tisdale and Goodman is also true in the present case. Defendants' only connection with the facts of this case is that one defendant was the negligent driver and the other two are alleged to have been the owners of the car which collided with plaintiff's. Plaintiff was clearly in a better position than defendants to prove, by his own testimony and that of his experts, what part of the pain, discomfort and other harms that he complained of were the result of the collision for which defendants were responsible. Every consideration of fairness leads, as it did in Tisdale and Goodman, to requiring plaintiff to bear the burden of proving his recoverable damages. The burden-shifting rule applied in Fosgate and Sholtis has no application here. The trial judge was therefore correct in charging the jury that plaintiff had the burden of proof with respect to aggravation of preexisting injuries.
We turn next to plaintiff's contention that he was prejudiced by the trial court's erroneous admission of hearsay evidence in connection with his medical records. The hearsay which he finds objectionable was introduced during the direct testimony of defendant's medical expert. Defendant's expert was questioned on direct examination about notations in the hospital records recording a Dr. Crystal's observations and treatment of plaintiff on July 1, 1987, at the Bay Ridge Medical Center. The accident had occurred on June 19, 1987.
Defendant's medical expert witness was asked the following questions and made the following replies:
Q. Dr. Crystal notes that there was no spasm present? Is that something that you were to rely upon in forming your opinion in this case regarding the plaintiff's injuries?

*163 A. I didn't rely upon it but it confirms my original opinion.
Q. Which is what?
A. Which is that [plaintiff] had sustained a strain of the cervical ligaments and have [sic] now recovered.
Q. Is it significant Doctor, that as of July 1st, 1987 there was no spasm present?
....
A. Yes.
Q. Why is that significant?
A. Well, that is a relative short period after the accident and July 1st being only two and a half weeks following the accident of June 19, and the significance of that would be that the degree of injury was relatively minor and had subsided by that time.
Q. And we know that based upon the hospital records, when you were supplied that report, from the hospital records, dated June 20th, that there was straightening of the lordotic curve, is that true?
A. That is correct.
Q. And that would be an indication that there were spasms which [were] present, is that right?
A. That would indicate that there was some spasm at the time that [the] x-rays were taken on June 20th.
Q. And by July 1st that spasm wasn't present, is that right?
A. According to this report, that is correct.
Plaintiff objected that the testimony about Dr. Crystal's notations in the hospital records was inadmissible hearsay. Defendants argued that under former Evid.R. 56(2) (now N.J.R.E. 703), the testimony about Dr. Crystal's observations was admissible because their expert witness had relied on those observations in forming his own opinion. Defendants' expert witness explained, however, that he had not relied on the record notations to formulate his original opinion, but only to confirm it. On the basis of that clarification, the trial judge ruled that since the notations had been used only for corroboration, the expert witness's testimony about Dr. Crystal's observations was inadmissible. However, the jury had already heard the testimony and the trial judge did not instruct them to disregard it.
In our view, the testimony to which plaintiff objected was admissible. There is no material distinction between an expert's relying on hearsay data to formulate an opinion and his relying on *164 the same data to confirm an opinion which he has already reached. The apparent distinction depends solely on how an expert chooses to describe his use of the data. With equal accuracy, defendant's expert could have explained either that the new data had confirmed his former opinion or that, with the aid of the new data and the data which he previously possessed, he had formed a new opinion that was the same as his old one. The admissibility of the witness's testimony should not depend on such a trivial distinction, and we hold that it does not. See State v. Humanik, 199 N.J. Super. 283, 305, 489 A.2d 691 (App.Div.) ("It has long been the law that hearsay statements upon which an expert relies are admissible, not for establishing the truth of their contents, but to apprise the jury of the basis of the opinion reached."), certif. denied, 101 N.J. 266, 501 A.2d 934 (1985). Dr. Crystal's notations were therefore admissible to show the basis for the defendants' expert's opinion. If the notations were admissible only on that ground, plaintiff would have been entitled to an appropriate limiting instruction, but the trial court's failure to provide such an instruction sua sponte would not have warranted reversal, since the evidence, even without a limiting instruction, did not have the capacity to produce an unjust result. N.J.Evid.R. 6; State v. Rajnai, 132 N.J. Super. 530, 537-38, 334 A.2d 364 (App.Div. 1975). Compare N.J.R.E. 105. Moreover, the hospital record which included Dr. Crystal's notations was apparently already in evidence, presumably pursuant to N.J.Evid.R. 63(13) (business entries). Compare N.J.R.E. 803(c)(6) and 808. The included hearsay to which plaintiff objected was a straightforward observation of a treating physician which was not unfairly prejudicial to plaintiff in any respect. It was therefore also admissible on that ground. Falcone v. New Jersey Bell Tel. Co., 98 N.J. Super. 138, 146-50, 236 A.2d 394 (App.Div. 1967), certif. denied, 51 N.J. 190, 238 A.2d 475 (1968) (hospital record of doctor's diagnosis of herniated invertebral disc was admissible).
Lastly, plaintiff contends that the trial court should have granted his motion for a new trial, or alternatively for an additur, *165 on the ground that the jury verdict was so inadequate that it manifests a miscarriage of justice. We disagree. A motion for a new trial on that ground should not be granted unless the verdict is so disproportionate to the injury that it shocks the conscience of the court and clearly and convincingly demonstrates a miscarriage of justice. Tronolone v. Palmer, 224 N.J. Super. 92, 97-98, 539 A.2d 1224 (App.Div. 1988) The verdict in this case does not fall into that category. The jury was entitled to believe defendants' testimony and disbelieve plaintiff's. The verdict which it returned was amply supported by the evidence.
The judgment appealed from is affirmed.
NOTES
[1] There are dicta in Tisdale which can be read as meaning that Fosgate's burden-shifting rule has no applicability to any but medical malpractice cases. Such an interpretation is contrary to the language of Fosgate. If Tisdale suggests such a limitation, we disagree.