**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0512-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PHILLIP A. STEED, a/k/a
PHILIP A. STEED, CALVIN
STEED, and SEAN DUNN,

     Defendant-Appellant.

_____

Submitted October 31, 2018 – Decided January 30, 2019

Before Judges Alvarez and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 15-06-0862 and 16-07-0971.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Charles C. Cho, Assistant Prosecutor, on the brief).

PER CURIAM

Tried to a jury, defendant Phillip A. Steed was convicted of two counts of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count one, cocaine; count five, heroin); two counts of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count two, cocaine; count six, heroin); two counts of third-degree possession of a CDS within 1000 feet of a school with the intent to distribute, N.J.S.A. 2C:35-7 (count three, cocaine; count seven, heroin); two counts of second-degree possession of CDS within 500 feet of public housing with intent to distribute, N.J.S.A. 2C:35-7.1 (count four, cocaine; count eight, heroin); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count nine); and fourth-degree throwing bodily fluid at a law enforcement official, N.J.S.A. 2C:12-13 (count ten). The jury acquitted defendant of count eleven, third-degree terroristic threats, N.J.S.A. 2C:12-3(b).

Prior to sentencing, defendant's application to drug court was denied. The judge's denial was based solely on this conviction of aggravated assault which the judge concluded operates as a statutory bar preventing defendant's admission to drug court probation. At the sentencing hearing on August 17, 2017, the judge merged counts one and two with count three, and counts five and six with count

seven. He then imposed a nine-year term with four years of parole ineligibility on count three, nine years imprisonment on court four, a five-year term with parole ineligibility of three years on count seven, nine years imprisonment on count eight, 180 days on count nine, and an eighteen-month term on count ten. Only count ten was to be served consecutively, as mandated by N.J.S.A. 2C:12-13. Thus defendant's aggregate sentence was ten and a half years, subject to parole ineligibility of four years. The sentence was to be served concurrently to an earlier indictment, charging defendant with various drug offenses to which he had entered guilty pleas. We now affirm defendant's convictions and sentences, except that we direct the trial court to reconsider defendant's drug court application pursuant to State v. Ancrum, 449 N.J. Super. 526 (App. Div. 2017), should defendant wish to reapply.

We glean the following facts from the trial record. On March 2, 2016, defendant was arrested for trespassing in his sister's apartment building. He refused to be handcuffed, and when eventually arrested and searched incident to arrest, officers seized a black plastic bag containing 101 individual glassine envelopes of crack cocaine and 69 folds of heroin. Defendant had no drug paraphernalia on his person, such as needles, pipes, straws, or spoons.

3

Defendant continued to struggle once seated in the patrol car, eventually dislodging a window. The officers attempted to subdue defendant, who kicked one of the officers in the stomach. Despite being warned he would be pepper sprayed, defendant continued to struggle. The officers sprayed him and, pursuant to police protocol, drove him to a hospital. Defendant told one of the officers that he was "dead," and would "let the bullets do the talking." He also told that officer that he would not "make it" to his next tour. In the presence of a second officer, defendant spat at the first, striking his left leg. The officer at whom defendant spat was in the hospital room because he too required medical treatment from pepper spray.

Defendant testified at trial despite having been convicted on four prior occasions, a fact brought out only on cross-examination. To describe his testimony overall as equivocal and confusing is an understatement. Defendant initially denied remembering if he had ever been convicted, insisted he was not trespassing in his sister's building, denied ever having been warned on the morning of his arrest that he would be arrested if he remained in the area, and said it was "possible" that he kicked out the window and spat at the officer because once he was pepper sprayed he struggled to breathe and wanted to wipe his face but was handcuffed.

A-0512-17T4

Defendant also testified that he was an addict, but not a drug dealer, and that he accidentally stumbled across the black plastic bag abandoned in his sister's hallway where some unknown men had been fighting that day. He used some of the drugs and intended to keep the remainder for his own use. He denied threatening the officer, and claimed he was pepper sprayed before being placed in the patrol car and not afterwards.

The State's expert witness in the area of narcotics enforcement, packaging, and investigation was Detective Carlos Lugo, employed by the Street Crimes Unit of the Jersey City Police Department (SCU) since 2004. He testified that the quantity of drugs found on defendant's person significantly exceeded the amount an addict would use in a day.

Lugo completed several courses and training on drug identification offered by the Passaic County Police Academy, the New York City Undercover Narcotics Unit and the Organized Crime Control Bureau, the Drug Enforcement Agency, and the Department of Justice. He had been involved in over 2000 narcotics investigations and over 2000 illegal narcotics arrests. During the course of Lugo's work, he spoke with the purchasers of illegal narcotics as well as with drug dealers.

A-0512-17T4

Lugo stated that the most a heroin addict would typically purchase in a day was ten folds of heroin and "that will be on the high side."  He also testified that the most a heroin user would use in a single day is ten folds, and that only in the case of "a strong addiction."  Regarding crack cocaine, Lugo opined that the most a user admitted to buying in one day is "a few,"  adding, "I've never come across anybody that says they -- they purchased ten" or "ingested over ten or close to ten" bags or vials of crack cocaine in one day.

## I.

We first address defendant's contention that the expert's reliance on hearsay, and the court's failure to instruct the jury to ignore the hearsay, was prejudicial reversible plain error.  Since defendant did not object, the trial court's decision will not be disturbed unless he shows plain error that is "of such a nature as to have been clearly capable of producing an unjust result," or it is in the interest of justice to do so.  R. 2:10-2.

Rule 702 of the Rules of Evidence permits parties to introduce expert witnesses who are "qualified . . . by knowledge, skill, experience, training, or education."  N.J.R.E. 702; see also State v. Jenewicz, 193 N.J. 440, 454-55 (2008) ("a court should . . . be satisfied that the expert has a basis in knowledge,

skill, education, training, or experience to be able to form an opinion that can aid the jury on a subject that is beyond its ken").  Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
>
> [N.J.R.E. 703.]

Thus, the Rules of Evidence permit the witness to rely on evidence that would otherwise be inadmissible so long as "the inadmissible evidence . . . [is] of the type reasonably relied upon by experts in the field."  Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 7 on N.J.R.E. 703 (2018); see also State v. Michaels, 219 N.J. 1, 34 (2014); Agha v. Feiner, 198 N.J. 50, 63 (2009); State v. Raso, 321 N.J. Super. 5, 16 (App. Div. 1999).

We "apply a deferential standard of review to the trial court's evidentiary rulings."  State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017).  "The necessity for, or propriety of, the admission of expert testimony, and the competence of such testimony, are judgments within the discretion of the trial court."  State v. Zola, 112 N.J. 384, 414 (1988).  "[T]he admission or exclusion

of evidence is within the discretion of the trial court." State v. Torres, 183 N.J. 554, 567 (2005).

Hearsay is an out-of-court statement offered for the truth of the matter it asserts. State v. Gore, 205 N.J. 363, 375 (2011) ("[o]ur hearsay rules of evidence clearly provide that 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted' is inadmissible unless encompassed by one of the stated exceptions to the rule precluding hearsay testimony" (citation omitted)). Hearsay is not admissible under N.J.R.E. 802, subject to exceptions as outlined in N.J.R.E. 803-804, and when the Confrontation Clause is implicated, as discussed in Crawford v. Washington, 541 U.S. 36 (2004).

Expert witnesses, however, are "permitted to rely upon facts constituting hearsay, so long as they are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" Corcoran v. Sears Roebuck & Co., 312 N.J. Super. 117, 134–35 (App. Div. 1998) (citing N.J.R.E. 703). "The hearsay statements so considered are not admitted to establish the truth of their contents, but to apprise the jury of the basis of the expert's opinion." Id. at 135 (citing Blanks v. Murphy, 268 N.J. Super. 152, 163–64 (App. Div. 1993)). Experts may rely on documentary hearsay

statements, "'interviews,' and 'discussions' with persons having relevant knowledge for the formation of an opinion." Ibid. (citations omitted); see also In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 641 (App. Div. 2009), aff'd, 204 N.J. 179 (2010); Torres, 183 N.J. at 575-76 ("[A]n expert may offer out-of-court statements of others to support the opinions presented.").

"However, hearsay is not admissible substantively as establishing the truth of the statement." State v. Vandeweaghe, 351 N.J. Super. 467, 480 (App. Div. 2002), aff'd and remanded, 177 N.J. 229 (2003). In Vandeweaghe, we found prejudicial an expert witness' testimony that consisted of extensive hearsay regarding the defendant's life, habits, and history. 351 N.J. Super. at 478-79, 483-84. The expert's "recitation of hearsay" denied the defendant his confrontation rights. Id. at 483.

Distinguishable from Vandeweaghe is State v. Torres, where the Supreme Court allowed an expert witness to rely on knowledge, some of which he obtained through interviews. The expert's testimony on street gang hierarchy and operations built on knowledge gathered through interviews of gang members and several years of his own experience in law enforcement. 183 N.J. at 562. The Court decided that the trial court properly admitted the testimony:

> In formulating his testimony regarding the hierarchy, discipline, and operations of MS–13, [the expert] relied

on information received from gang-member interviews, his and other officers' field observations, and seminars. As the Appellate Division observed, the "myriad of interviews upon which [the expert] based his knowledge of the subject are the kind of sources ordinarily utilized by experts in sociological studies." In order to learn about gang activity, unless the expert had infiltrated a gang, it would be expected that the officer would obtain information of gang activities from gang-member interviews. That is the type of information reasonably relied on by police officers in investigating gangs. Moreover, [the expert] did not merely parrot out-of-court statements in rendering his opinion. Based on his combined experiences of gang-member interviews, numerous hours of seminar instruction, and multiple conversations with fellow officers, he provided a coherent assessment of the structure, operations, and disciplinary rules of MS–13.

[Id. at 578-79.]

Nonetheless, the Court cautioned that trial courts should balance the permissible uses of expert testimony with a defendant's right to confront and cross-examine his accusers. "The expert may not serve merely as a conduit for hearsay statements of gang members who have been interviewed by the expert but not called as witnesses." Id. at 579. Where appropriate, the expert's testimony should be limited to a specific area, ibid., and the court should weigh the probative value of the proposed testimony against the potential for prejudice. Id. at 580.

This case is more akin to <u>Torres</u> than <u>Vandeweaghe</u>. Here, the State's expert witness was well qualified. Based on his extensive experience, Lugo testified about the typical purchasing habits of drug users and addicts.

Unlike in <u>Vandeweaghe</u>, Lugo did not offer any individual statement for the truth of the matter asserted; he did not recite hearsay to inculpate the defendant. Rather, Lugo summarized his experience and his knowledge to offer evidence that would aid the jury in assessing whether defendant was a mere drug addict or a drug dealer. Some of Lugo's knowledge no doubt came from "conversations" he had with drug purchasers and drug dealers. This is not hearsay.

Lugo's testimony was "not admitted to establish the truth of their contents, but to apprise the jury of the basis of the expert's opinion." <u>Corcoran</u>, 312 N.J. Super. at 135. This is similar to <u>Torres</u>, where the Supreme Court found admissible a street gang expert's testimony regarding the operation and hierarchy of street gangs, based on interviews the expert had with street gang members. <u>Torres</u>, 183 N.J. at 578-79. Because Lugo's testimony did not rely on actual hearsay, the trial court properly admitted his testimony. Furthermore, the trial court was not required to give a jury instruction regarding any hearsay evidence relied upon by Lugo.

Even if the statements are considered hearsay, they cannot be fairly characterized as substantive evidence going to the question of the guilt or innocence of this defendant, who offered a specific explanation for his possession of a large quantity of drugs. Defendant said he was an addict, not a dealer, merely found the rather substantial amount of drugs in a hallway, and happened to be carrying them on his person when arrested. He had no paraphernalia related to use at the time. Under these circumstances, the absence of a limiting instruction certainly cannot be considered prejudicial. The jury rejected defendant's explanation, no doubt based on their assessment of his testimony and the other proofs in the case. Whether defendant would have benefitted from the instruction is mere speculation when the trial is viewed in its entirety.

## II.

The statute regarding throwing a bodily fluid requires a purposeful state of mind. See N.J.S.A. 2C:12-13 ("A person who throws a bodily fluid at a . . . law enforcement officer while in the performance of his duties or otherwise purposely subjects such employee to contact with a bodily fluid commits an aggravated assault." (emphasis added)). The indictment language stated defendant "knowingly and/or purposely" threw the bodily fluid, and the verdict

sheet says "knowingly or purposely." The trial judge used both purposely and knowingly and/or purposely in charging the jury.

Where a defendant raises error in a jury instruction, the charge must be read as a whole. The court will not consider just the allegedly erroneous portion. State v. Wilbely, 63 N.J. 420, 422 (1973). No party is entitled to have the jury charged in his or her own words. All that is necessary is that the overall instruction be accurate. State v. Thompson, 59 N.J. 396, 411 (1971); Kaplan v. Haines, 96 N.J. Super. 242, 251 (App. Div. 1967), aff'd, 51 N.J. 404 (1968), rev'd on other grounds, Largey v. Rothman, 110 N.J. 204, 206 (1988).

Where a defendant failed to object to the instruction in the trial court, Rule 1:7-2 specifically provides that a showing of plain error must be made. "[P]lain error requires demonstration of '[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Burns, 192 N.J. 312, 341 (2007) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)); see also State v. Chapland, 187 N.J. 275, 288-89 (2006); State v. Brown, 190 N.J. 144, 159 (2007) (failing to find plain error where the court did not provide a

limiting instruction regarding defendant's pre-arrest conduct and silence, which had been offered for impeachment purposes).

In State v. Gonzalez, we recognized the ambiguity inherent in the phrase "and/or" as used in jury instructions. 444 N.J. Super. 62, 71 (App. Div. 2016). In Gonzalez, the judge charged the jury to find whether the defendant was "legally accountable" for "robbery and/or aggravated assault." Id. at 73. We said:

> [T]he judge's repeated use of the phrase "and/or"—in defining what the jury was obligated to determine—so confusing and misleading as to engender great doubt about whether the jury was unanimous with respect to some part or all aspects of its verdict or whether the jury may have convicted defendant by finding the presence of less than all the elements the prosecution was required to prove.
>
> [Id. at 71 (emphasis added).]

The court noted that "[w]herever found in the decisions of our courts, 'and/or' has been recognized as creating ambiguity." Ibid. Even so, courts may be able to "intuit the meaning of the ambiguous statement through consideration of extrinsic evidence or application of accepted canons of interpretation and construction." Id. at 72.

In this case, however, and/or does not engender great doubt about unanimity. The context within which the alleged criminal conduct occurred has

14

to be examined. The incident was witnessed by not just the officer on whom defendant spat, but another. No one could have been struck by the bodily fluids but law enforcement personnel.

This is also in contrast to State v. Majewski, 450 N.J. Super. 353, 363 (App. Div. 2017), in which we said that the mental state required for N.J.S.A. 2C:12-13 is "purposely." The statute requires proof of a purposeful contact, but in Majewski, the defense theory was that the defendant was aiming at another inmate, and not at a corrections officer. Id. at 359. Since both were present, it was possible she simply missed her target. In contrast to the scenario here, it is clear that defendant aimed the assault only at police.

At trial, the officer testified that defendant threatened to kill him. Right afterwards, the officer reported:

> [A]s I proceeded to walk into the room, I saw the defendant lunge towards me. He pulled his head back. As I realized he possibly could have been spitting and then he spit directly in my direction, striking my left leg. That's when I stepped back.

Another officer corroborated the testimony: "I know [defendant] spit at [the] [o]fficer []." Defendant did not clearly and explicitly deny spitting on the officer, but said that he was coughing and gagging. In finding defendant guilty

15

of count ten, the jury chose to believe the officer that defendant threw a bodily fluid at him and disbelieved that defendant was merely coughing and gagging.

The distinction between knowing and purposeful was crucial in Majewski, but not here. Given defendant's language and behavior, he could have had no other purpose but to strike an officer. Since neither the instruction nor the verdict sheet were objected to by defense counsel, in order to constitute reversible error, plain error must be found. Given the context of the threat and who was present at the time, we cannot say that the error resulted in prejudice. It was harmless. See R. 2:10-2.

## III.

Finally, defendant contends that his application for special probation into drug court, N.J.S.A. 2C:35-14(a)(7), should have been reviewed and not rejected out of hand because the conviction for which defendant was about to be sentenced was an aggravated assault, which by rule and statute excludes admission into drug court. In Ancrum, we have said that in applying the bar, a court should only consider prior convictions or other pending charges of the prohibited offenses. 449 N.J. Super. at 535. Because the judge agreed with the prosecutor that a conviction for aggravated assault was a disqualifier under the statute, defendant's application was rejected. The judge did not reach the State's

other argument that defendant should not be admitted because he posed a danger to the community. Given that defendant's only conviction for aggravated assault was this event, for which he had not been sentenced before this application, his admission should not have been automatically barred for that reason. The details regarding the event were known to the judge and prosecutor. Should defendant be interested in pursuing his application at this juncture, we remand the matter solely for him to restart the process and direct that the court reconsider his application.

Affirmed in part, reversed and remanded only as to defendant's application for drug court.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17