257 N.J. Super. 163 (1992)
608 A.2d 356
CAROL ANN FELDMAN, PLAINTIFF-RESPONDENT,
v.
LEDERLE LABORATORIES, A DIVISION OF AMERICAN CYANAMID COMPANY, A MAINE CORPORATION DOING BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 1989.
Decided July 13, 1989.
Remanded July 24, 1991.
Reargued April 13, 1992.
Decided June 15, 1992.
*165 Before Judges MICHELS, MUIR, Jr. and KEEFE.
William C. Slattery argued the cause for the appellant (Norris, McLaughlin & Marcus, attorneys).
James I. Peck IV argued the cause for the respondent.
Remanded by Supreme Court July 24, 1991.
The opinion of the court was delivered by KEEFE, J.A.D.
*166 This matter is again before us on remand from the Supreme Court to decide those issues raised on Lederle's appeal but not addressed by us in our prior opinion. Feldman v. Lederle Lab., 125 N.J. 117, 122, 592 A.2d 1176 (1991) (Feldman II), rev'g, 234 N.J. Super. 559, 561 A.2d 288 (App.Div. 1989), petition for cert. filed, ___ U.S. ___, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1991).[1]

I

The Distinction Between Preemption and Compliance With A Legislative Standard.
The jury verdict rejected any notion that Lederle's product was defective at the time it was first marketed or when it was administered to plaintiff in 1960 and 1961. Rather, Lederle's liability was based on "its failure to warn during the 13 month period that elapsed between November of 1962, when it first wrote to the Food and Drug Administration (FDA) for permission to change its labeling, and December of 1963, when the FDA approved the label change and Lederle complied." Feldman v. Lederle Lab., 234 N.J. Super. 559, 573, 561 A.2d 288 (App.Div. 1989). (This conclusion was not challenged by plaintiff on appeal to the Supreme Court. Feldman II, supra, 125 N.J. at 131, 592 A.2d 1176.) Thus, liability was predicated on defendant's duty to warn based upon subsequently acquired knowledge of a danger which was actually known.
In such circumstances, Lederle's duty was to warn "`as soon as reasonably feasible.'" Feldman II, supra, 125 N.J. at *167 144, 592 A.2d 1176 (quoting Feldman v. Lederle Lab., 97 N.J. 429, 456, 479 A.2d 374 (1984) (Feldman I)). Even where the manufacturer knows of the danger, as Lederle admits it did by November 1962, the question is whether it "`acted in a reasonably prudent manner in marketing the product or in providing the warnings given.'" Id. (quoting Feldman I, supra, 97 N.J. at 451, 479 A.2d 374). "Under that standard negligence and strict liability in failure-to-warn cases may be deemed to be functional equivalents." Feldman II, supra, 125 N.J. at 144, 592 A.2d 1176.[2] Thus, while the manufacturer's liability is strict, it is not absolute.
Lederle's primary defense in this case was that, irrespective of its knowledge in November 1962, it had, in the context of the federal regulatory scheme to which it was subject, acted as a reasonably prudent manufacturer by informing the FDA and requesting permission to change its warnings. Lederle is correct in its argument that, even in the absence of federal preemption, a drug manufacturer is entitled to introduce evidence of compliance with FDA regulations as proof of the reasonableness of its conduct. McQuaid v. Burlington Cty. Memorial Hosp., 212 N.J. Super. 472, 475-76, 515 A.2d 796 (App.Div. 1986).
In the instructions to the jury the trial judge properly advised them that "reasonableness of the defendant's conduct is a factor to be considered in determining liability." However, with respect to the relevancy of FDA regulations in that context, the judge said:
Now for legal reasons, with which you need not concern yourselves, this Court has ruled that the defendant, Lederle Laboratories, was not required to obtain *168 the prior approval of the Federal Food and Drug Administration before issuing a warning concerning the side effect of tooth discoloration in Declomycin between 1960 and 1963. The Federal Food and Drug Administration regulations and requirements are minimal standards and the defendant still owes a duty to warn its users in the exercise of reasonable care. However, the exchange of correspondence and other communications between the Federal Food and Drug Administration and the defendant, Lederle Laboratories, have been admitted into evidence and may be considered by you on the issue of the reasonableness of defendant's conduct.
In essence the instruction advised the jury that, as a matter of law, Lederle had not exercised reasonable care in waiting for FDA approval before warning of the danger because federal regulations did not require prior FDA approval. If the judge was correct in that analysis of the regulations, then the interchange of correspondence between the FDA and Lederle concerning the request for permission to change the warnings, which the judge permitted the jury to consider on the question of Lederle's reasonableness, was irrelevant to that issue. Armed with the knowledge it had in November 1962 and the duty to warn as soon as feasible, how could it be said that Lederle acted reasonably in waiting for a federal agency to give approval which the law did not require it to seek? Since Lederle offered no other explanation for its delay, there appears to have been no fact issue for the jury to decide.
On the other hand, if the judge's interpretation of the regulations was incorrect and Lederle was required to submit the changed warning to the FDA for prior approval the instruction was erroneous. The Restatement (Second) of Torts § 288C (1965) provides:
Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions.
Applying that principle to this case, the question to be decided by the jury is whether Lederle in the exercise of reasonable care should have taken steps to warn physicians of its concerns while awaiting FDA approval. See Feldman I, supra, 97 N.J. *169 at 458-61, 479 A.2d 374.[3] While the trial judge undoubtedly concluded that there was sufficient evidence to prove that Lederle should have done more, the ultimate resolution of that issue was a question of fact for the jury. The instruction given, however, had the effect of directing the jury how to resolve the issue. Thus, the instruction given was erroneous if the judge's interpretation of the regulations was incorrect.
Our prior opinion in this matter held that the regulations in place in 1962 required Lederle to seek the approval of the FDA before changing its warnings at the risk of suffering suspension of its new drug application if the new labeling contained an untrue statement of material fact. Feldman, supra, 234 N.J. Super. at 587-88, 561 A.2d 288. The dilemma presented was that Lederle believed the proposed new warning to be true, but the FDA correspondence evidenced the agency belief that the proposed warning was inaccurate. Under our interpretation of the regulation, even in the absence of preemption, the question of fact presented was whether Lederle acted reasonably in withholding a warning in view of the agency's reluctance to approve it. Even assuming the federal regulations can be read to have allowed Lederle to change the warning prior to FDA approval and there was no risk of suspension so long as the change was subsequently deemed by the FDA not to constitute an untrue statement of material fact, the question remains whether the correspondence from the FDA was sufficient evidence to justify Lederle's decision to withhold a warning until such time as the FDA was convinced otherwise.
The Supreme Court in Feldman II disagreed only with our finding that "literal compliance" with the provisions of 21 C.F.R. § 130.9(a) (1960) "preclude[d] finding for plaintiff on her strict-liability claim for failure to warn." 125 N.J. at 147, 592 *170 A.2d 1176. The Court interpreted the statutory provision in the context of the Federal Food, Drug and Cosmetic Act of 1938 (FDCA) and concluded that
federal law did not clearly require that Lederle obtain prior approval from the FDA before warning of a known or knowable danger. Accordingly, we find nothing in the federal scheme to support the assertion that manufacturers of prescription drugs and antibiotics who literally comply with that isolated provision must be immune from state tort liability for injuries caused by their products.
Id. (emphasis added). The quoted passage from Feldman II is a recognition of the fact that Lederle was at least complying with the literal requirements of the regulation, i.e., it was seeking FDA approval before changing its warnings. However, the Supreme Court found that federal law did not "clearly" mandate that Lederle await government approval before warning of a known danger or prevent Lederle from taking other steps, such as withdrawing the product from the market, pending approval. Lederle's new drug application and license to distribute Declomycin would not be in jeopardy unless it was later ascertained that the proposed warning was "untrue," an event which retrospectively did not occur. The Court's interpretation of federal law, in our view, supports Lederle's fallback position that its compliance with FDA regulations was a factor to be considered by the jury in determining the reasonableness of its decision not to warn during the critical thirteen month period.
We conclude that Lederle's exception to the charge in this respect was properly taken. The error cannot be deemed harmless, especially in view of the FDA's reluctance to approve the changed warning for Declomycin. While the trial judge was correct in holding that the federal regulations did not preempt state tort law, that conclusion did not preclude consideration of Lederle's interpretation of the regulation and effort to comply with it on the question of the reasonableness of Lederle's conduct. The instructions had the effect of taking those considerations from the jury and directing the jury's *171 deliberations in only one direction, i.e., a conclusion that Lederle could have and should have done more.

II

Burden of Proof.
The plaintiff had the burden of proving that Lederle's conduct in marketing the product without a warning was unreasonable. That is, the plaintiff has the burden of proving that the product was defective. Feldman I did not change that requirement. The only burden shifting that occurs in failure to warn cases is where the defendant claims that the information about which plaintiff claims a warning should have been given was not "reasonably available or obtainable." Feldman I, supra, 97 N.J. at 455-56, 479 A.2d 374. Thus, in the context of this case, Lederle had the burden of proving its lack of knowledge in the years 1960 and 1961. However, Lederle admitted that it had the requisite knowledge in 1962 when it requested the FDA's permission to warn. Thus, as to the time period in which the jury found liability, Lederle had no burden of proof. The question was simply whether it acted reasonably in light of its admitted knowledge. Id. at 452, 479 A.2d 374.
The trial judge failed to explain the defendant's burden in the context of the evidence. See Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 242, 432 A.2d 925 (1981). That failure is significant in light of the jury's conclusion that the product was not defective during the period Lederle claimed lack of knowledge. The jury was instructed that:
you also may find for the defendant if you find that it has met its burden of proving that it acted as a reasonably prudent manufacturer in distributing Declomycin between 1960 to 1963 in light of the actual or constructive knowledge that it had of scientific, technological or other circumstances in that particular time.
This is a misstatement of the defendant's burden of proof in any context but it is especially egregious as to part of 1962 and all of 1963. Defense counsel excepted to that portion of the charge but it was not changed.
*172 Earlier, the judge had instructed the jury in general terms that the plaintiff had the burden of proving that the product was defective at the relevant period of time under consideration. However, those instructions failed to relate how the reasonableness of Lederle's conduct fit into the equation of finding a defect. The quoted instruction, however, clearly addresses the question of the reasonableness of Lederle's conduct and places the burden of proof on Lederle. We are of the opinion that shifting the burden of proof to Lederle in this context had the capacity to affect the jury's verdict concerning Lederle's liability in 1962 and 1963 and is not harmless error.

III

Instructions Concerning Apportionment Of Damages.
In Feldman I, the Supreme Court recognized the possibility that Lederle's liability could vary depending on what it knew or did not know about tooth staining during the relevant time period. The Court assumed that the general verdict in the first trial in favor of Lederle had been premised on Lederle's lack of knowledge for the entire time period, Feldman I, 97 N.J. at 462, 479 A.2d 374, a proposition that it found unsupported by the evidence in light of Lederle's admission that it was aware of the danger "at least by mid-November, 1962." Id. at 463, 479 A.2d 374. The Court postulated that if a jury found no defect in the product based on Lederle's lack of knowledge before the end of 1962, but found liability for failing to warn after it gained sufficient knowledge, "defendant would be responsible at least for the enhancement of the condition." Id. at 464, 479 A.2d 374.
On retrial, the trial judge failed to explain to the jury how its answers to interrogatory # 2 on the verdict sheet concerning the issue of "defect" would affect its assessment of damages. While we agree with plaintiff that there was sufficient evidence to prove that Declomycin was a cause in fact of plaintiff's tooth staining, the jury verdict reveals that Declomycin was not the *173 legal cause of injury to the plaintiff in at least 1960 and 1961. While defendant's objection to the court's proposed questionnaire to the jury was somewhat unartfully phrased, we are satisfied that the objection, together with the Supreme Court's opinion on the subject, was sufficient for the trial judge to have been alerted to the need to instruct the jury specifically on the issue of damage apportionment.
By acknowledging Lederle's potential liability for "the enhancement" of plaintiff's condition the Supreme Court was acknowledging the "self-evident principle of tort law that valuation of allowable damages `is animated by a premise similar to that underlying causation: that a tortfeasor should be charged only with the value of the interest he destroyed.'" Scafidi v. Seiler, 119 N.J. 93, 112, 574 A.2d 398 (1990) (citation omitted).
Plaintiff's brief submitted in connection with this argument suggests that the burden of the apportionment should be placed on the defendant, citing Fosgate v. Corona, 66 N.J. 268, 272-73, 330 A.2d 355 (1974). However, Tisdale v. Fields, 183 N.J. Super. 8, 443 A.2d 211 (App.Div. 1982), held that Fosgate is limited to medical malpractice cases. Tisdale has been criticized by another part of this court on the grounds that it interpreted Fosgate too narrowly. Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 27-28, 568 A.2d 1196 (App.Div. 1989). However, the criticism is not well taken. In Ostrowski v. Azzara, 111 N.J. 429, 443-44, 545 A.2d 148 (1988), the Supreme Court cited Tisdale as an example of the line of cases which discuss the policy reasons for not shifting the burden to the defendant in a "non-medical malpractice context." Recently, another part of this court held that Ostrowski "fortifies the view that Fosgate was intended for application only in medical malpractice cases." Goodman v. Fairlawn Garden Assocs., Inc., 253 N.J. Super. 299, 303, 601 A.2d 766 (App.Div. 1992). While the Goodman court did not agree with the Sholtis opinion's criticism of Tisdale, it agreed with the Sholtis court's decision to shift the burden under the facts of that case because there was an "indivisible injury sustained by each plaintiff [which] was *174 the product of a gradual process contributed to by multiple parties." Id. at 304, 601 A.2d 766 (footnote omitted). "In the case of a unitary injury caused by concurrent negligence, the plaintiff is naturally relieved of this burden [of proving apportionment] because of the joint liability which is the usual concomitant of concurrent negligence." Id. at 306, 601 A.2d 766.
In this case, as distinguished from Sholtis, we are not dealing with a unitary or indivisible injury. Dr. Houpt's testimony, thoroughly read, suggests an incremental injury. We are satisfied from our review of his testimony that such damages can be reasonably apportioned. While predictions as to the nature and extent of plaintiff's tooth staining are functions of "dose, time of administration [and] type of drug" used, those predicate facts are within the knowledge of plaintiff's father and susceptible of proof. A reasonable estimate of the time of occurrence can be made when the expert is provided with the amount of the dosage and the approximate time in the child's development when the drug was administered.

IV

The Charge in General.
Other aspects of the charge, though not warranting reversal, merit comment so that they can be corrected at the retrial. As far back as Feldman I, it was apparent that liability considerations in this case differed depending upon what period of time was being addressed. In the years prior to November 1962, Lederle took the position that it did not have sufficient knowledge to warn. As pointed out earlier, Lederle had the burden of proving lack of knowledge on that issue. If it failed in that respect the imputation of knowledge would enure to plaintiff's benefit and the question would be whether Lederle acted reasonably in light of that knowledge. Subsequent to November 1962, however, Lederle admitted knowledge and, thus, the inquiry would be as outlined in part II of this *175 opinion. Instead of relating these critical principles to the jury in the context of the facts of the case, the charge simply recited rote principles of law. It has frequently been stated in our case law that instructions in product liability cases should be expressed in the factual context of the case in order to enhance the jury's understanding of these complex concepts. Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 210, 485 A.2d 305 (1984); Freund, supra, 87 N.J. at 242, 432 A.2d 925; Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 176, 406 A.2d 140 (1979); Navarro v. George Koch & Sons, Inc., 211 N.J. Super. 558, 574, 512 A.2d 507 (App.Div.), certif. denied, 107 N.J. 48, 526 A.2d 138 (1986).
Secondly, we note that the charge substantially quoted from the Court's opinion in Feldman I. There is nothing wrong with doing that per se. However, care should be taken so that the propositions taken from case law are relevant to and adapted to the actual facts and issues before the trial court. Sherwood v. Miles Shoes of Toms River, Inc., 54 N.J. Super. 129, 139, 148 A.2d 504 (App.Div.), certif. denied, 29 N.J. 580, 150 A.2d 806 (1959). "Appellate opinions are intended for the guidance of the bench and bar and are not to be read to the jury." Davis v. Equitable Life Assurance Soc'y, 90 N.J. Super. 328, 331, 217 A.2d 459 (App.Div. 1966). This is especially so where the principles are not relevant to the jury's function and/or contain statements that are prejudicial to the party affected. Id.
The case before the court was a failure to warn case. Thus, it was unnecessary and possibly confusing to instruct the jury on the various ways in which a defect can be proven by using the consumer expectation test or the risk/utility analysis. Neither plaintiff's theory of the case nor the facts called either of those theories into play. Likewise, the conclusion that the FDA regulation in question was a "minimal standard" is a legal one. From that conclusion certain results flow concerning the defendant's obligation. See discussion supra part I. Telling the jury that the regulation was a minimal standard does not *176 focus it on the issue. Instead it implies a judicial attitude toward the conduct of the defendant which the jury can use only in a way that prejudices defendant.
Lederle also contends that the trial judge's charge on causation was erroneous in that it failed to contain any instructions concerning the cause in fact issue presented by the proofs and failed to relate the proximate cause issue to the factual context. We cannot find anywhere in the record any objection to the proximate cause instruction, at least in terms of the way it is now being argued on appeal. There is a brief reference in the discussion concerning the interrogatory form to be given the jury to defendant's objection to the judge's decision to limit the jury's attention to the years of 1960 to 1963. Lederle argued that there was evidence in the case to support a factual determination that plaintiff was administered the drug by her father after the warnings were changed in 1963, and that there was additional medical evidence to suggest that some injury may have resulted therefrom. We agree that there was sufficient evidence to present those fact issues to the jury for resolution as they bore on the issue of causation. On retrial, those issues should be explored in greater detail and the instructions should be tailored to the facts as adduced on that issue. Campos, supra, 98 N.J. at 210, 485 A.2d 305.

V

Other Issues.
The trial judge excluded the testimony of Dr. Goddard on the grounds that he lacked personal knowledge of the facts relevant to the time period in question. Another judge had previously excluded Dr. Goddard as an expert witness because his report had not been furnished to the plaintiff in a timely fashion. The order which excluded Dr. Goddard's expert report was interlocutory. Lederle had no obligation to take an appeal from that order and, thus, contrary to plaintiff's argument, the issue was properly raised by Lederle on direct appeal. Nonetheless, *177 we find no error in either decision and would not reverse on the argument advanced by Lederle.
However, in view of the fact that the matter must be retried, we believe it appropriate, in light of the Supreme Court's reference to Dr. Goddard's Rule 8 testimony, to allow Lederle to call him as a witness if it so chooses. The trial court is free to enter whatever additional discovery orders may be necessary to facilitate an orderly presentation of these proofs.
The trial judge ruled that a notation made by Dr. Swanzey of Lederle on the December 3, 1962, letter from Dr. Barzilai of the FDA, regarding a telephone conversation with Barzilai on December 4, 1962, was inadmissible hearsay. In the telephone call, Dr. Barzilai purportedly advised Lederle against putting any statement warning of tooth staining in its labeling of Tetracycline. The evidence was offered to show why Lederle did not issue a warning at that time. Dr. Swanzey was a witness in the case and subject to cross-examination. In our view, he established the requisites for admissibility under Evidence Rule 63(13). See State v. Matulewicz, 101 N.J. 27, 29, 499 A.2d 1363 (1985). While we are not satisfied that this error, standing alone, was capable of affecting the result, we hold that on retrial the notation should be admitted with the letter on which it was written.
We need not address the question of whether punitive damages should have been charged to the jury and, if not, whether the charge on that issue had the capacity of affecting the compensatory verdict. We note that the jury resolved the punitive damage issue in favor of Lederle. Thus, a retrial of that issue is precluded by the principles of res judicata.
Similarly, the jury decided the issues of liability in favor of Lederle for the years 1960 and 1961. Thus, res judicata prevents the re-examination of those issues. The new trial is limited to the issue of Lederle's liability for the years 1962 and 1963 as well as compensatory damages for those years.
*178 We find all other issues presented by Lederle to be without merit requiring no further discussion. R. 2:11-3(e)(1).
Reversed and remanded for a new trial in accordance with this opinion.
NOTES
[1] Counsel were afforded the opportunity to file supplemental briefs and present additional argument. We have denied Lederle's request to withhold this decision pending the outcome of its petition for certiorari to the United States Supreme Court. The petition is apparently on "hold" awaiting the Court's decision in Cipollone v. Liggett Group, Inc., 893 F.2d 541 (3d Cir.1990), cert. granted, ___ U.S. ___, 111 S.Ct. 1386, 113 L.Ed.2d 443 (1991).
[2] For this reason, if for no other, we observe that it serves no purpose for a trial judge to describe the case to the jury as a "strict liability warning case," as the trial judge did here. The jury has no way of discerning or appreciating the difference between a simple negligence case and a strict liability case without further explanation. Indeed, no explanation was offered here. See infra part IV.
[3] In Feldman II, the Court suggests that Lederle might also have considered withdrawing the product from the market pending approval. 125 N.J. at 153, 592 A.2d 1176. Its failure to do so might be considered by a jury as unreasonable.