840 A.2d 942 (2004)
366 N.J. Super. 209
Lois REICHERT, Plaintiff-Appellant,
v.
Josefina VEGHOLM, Russell Van Kampen, Defendants-Respondents, and
Arthur I. Gates, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 2003.
Decided January 30, 2004.
*943 William D. Sanders, West Orange, argued the cause for appellant (Alpert, Butler, Sanders, Norton & Bearg, attorneys; Mr. Sanders and Clark E. Alpert, of counsel and on the brief).
John F. Gaffney, Morristown, argued the cause for respondents (Smetana, Mahoney & Gaffney, attorneys; Mr. Gaffney, on the brief).
Before Judges STERN, LEFELT and PAYNE.
The opinion of the court was delivered by LEFELT, J.A.D.
Plaintiff Lois Reichert fell while going to her dentist, defendant Arthur Gates, and injured her arms, neck, and knee. Approximately 24 days later, Reichert claims to have injured the same parts of her body in an automobile collision with a car driven by defendant Josefina Vegholm and owned by defendant Russell Van Kampen. Reichert sued the three defendants, settled with Gates, and proceeded to a damagesonly trial against the automobile defendants, *944 Vegholm and Van Kampen. The jury found no cause of action based upon its finding that Reichert did not sustain either an injury or an aggravation of any injury as a proximate cause of the automobile accident.
Reichert appealed, contending that the trial court erroneously instructed the jury that plaintiff, and not defendants, bore the burden of apportioning damages between Reichert's fall and the automobile accident. Because this automobile accident case involves a simple aggravation of a pre-existing injury, the judge's charge properly placed the burden of apportioning damages on plaintiff, and we affirm.

I.
For purposes of this opinion, we accept Reichert's contentions and assume that she suffered injuries to the same parts of her body from the fall and the automobile collision, less than one month later. With this factual assumption, we need not describe the evidence that was presented at trial and add only the following brief procedural history.
At the trial, after Reichert's medical expert claimed to be unable to apportion plaintiff's damages between the fall and collision, Reichert argued in response to defendant's motion to dismiss plaintiff's complaint, which was made at the end of testimony, that the Model Jury Charge (Civil), § 6.11(G) (Jan.1997), for aggravation of preexisting injuries, which she had previously requested, should not be given. The judge nevertheless instructed the jury in accordance with the Model Charge and told the jury that plaintiff could recover for the aggravation or worsening of her injuries, "but only to the extent of that aggravation." The judge then informed the jury that plaintiff had the burden of proving what portion of her condition was due to her fall and what portion was attributable to the automobile collision. According to the instruction, Reichert would be entitled to damages against the automobile defendants only for those injuries attributable to the automobile collision, either because the collision aggravated injuries suffered in the fall or resulted in separate identifiable injuries.
On appeal, Reichert argues the charge, placing the damage apportionment burden on plaintiff, erroneously caused the jury to decide against her. Accordingly, Reichert requests that we reverse the jury's verdict of no cause of action and remand for a new trial at which the jury would be instructed that defendants bear the burden of apportioning plaintiff's damages between the fall and collision.

II.
We start our analysis with the well-recognized principle that to prevail against a negligent defendant, plaintiff must prove not only that defendant was negligent but also that defendant's negligence was a proximate cause of the injuries and damages suffered. E.g., Paxton v. Misiuk, 34 N.J. 453, 463, 170 A.2d 16 (1961). A defendant should generally be responsible only for "the value of the interest he [or she] destroyed." Scafidi v. Seiler, 119 N.J. 93, 112, 574 A.2d 398 (1990). Apportionment of damages has long been favored by our courts. Poliseno v. Gen. Motors Corp., 328 N.J.Super. 41, 55, 744 A.2d 679 (App.Div.), certif. denied, 165 N.J. 138, 754 A.2d 1213 (2000).
While we recognize the importance of apportioning damages, it has not been easy to determine whether plaintiff or defendant should bear the burden of damage apportionment in specific cases. Placement of this burden can be determinative of whether an injured plaintiff is compensated. "[W]hen the burden is on plaintiff *945 to apportion damages between particular defendants and prior or subsequent injuries or conditions, the result of failure to carry the burden may be dismissal of plaintiff's case." O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of America, 361 N.J.Super. 264, 275, 825 A.2d 524 (App.Div.2003). Nevertheless, the general rule is that "the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff." Restatement (Second) of Torts, § 433B(1) (1965).
The general rule does not change when plaintiff's injuries or conditions are aggravated by a subsequent accident. "In the normal prior or post-personal injury aggravation claim, the party in the best position to present evidence of non-aggravation or exacerbation is plaintiff." O'Brien, supra, 361 N.J.Super. at 274, 825 A. 2d 524. In such a case, it is plaintiff who would best understand how a defendant's tort has affected or is related to prior or subsequent injuries or conditions. That is why when a plaintiff claims that an accident aggravated a prior injury or condition, it is plaintiff who "must prove what damages a particular defendant caused." Id. at 275, 825 A.2d 524.
To prevail in the ordinary aggravation of injury case, therefore, plaintiffs must separate those damages caused by a particular defendant's negligence from any prior or post injuries or conditions. E.g., Blanks v. Murphy, 268 N.J.Super. 152, 162, 632 A.2d 1264 (App.Div.1993) (plaintiff suffered injuries before and after auto accident for which suit was brought); Goodman v. Fairlawn Garden Assocs., Inc., 253 N.J.Super. 299, 302, 601 A.2d 766 (App. Div.), (plaintiff injured in fall and auto accident), certif. denied, 130 N.J. 7, 611 A.2d 647 (1992); Tisdale v. Fields, 183 N.J.Super. 8, 10-11, 443 A. 2d 211 (App.Div.1982)(injury in bus aggravated plaintiff's preexisting condition).

III.
Sometimes, however, the burden of proof to apportion damages is shifted from plaintiff to defendant. One of the leading cases shifting the apportionment of damages burden from plaintiff to defendant is Fosgate v. Corona, 66 N.J. 268, 272-73, 330 A.2d 355 (1974). In Fosgate, plaintiff alleged that she was injured when defendant doctor failed to diagnose that she was suffering from tuberculosis and thereby allowed the disease over time to become "far advanced" and more difficult to control. Id. at 270, 330 A.2d 355.
In determining to shift the damage apportionment burden to defendant doctor, the Court first observed that when the claimed malpractice involves treatment of preexisting disease, "the assessment of damages poses a problem because of the practical difficulty in separating that part of the harm caused by the malpractice from the preexisting disease and its normal consequences." Id. at 272, 330 A.2d 355.
The Court further stated that, considering the difficulty of apportioning damages in such malpractice cases, "the innocent plaintiff should not be required to establish what expenses, pain, suffering, disability or impairment are attributable solely to the malpractice or tortious act, but that the burden of proof should be shifted to the culpable defendant who should be held responsible for all damages unless he can demonstrate that the damages for which he is responsible are capable of some reasonable apportionment and what those damages are." Id. at 272-73, 330 A.2d 355.
The Court went on in Fosgate to explain, by quoting Prosser, that the reason for this principle is that a "choice must be *946 made, as to where the loss due to failure of proof shall fall, between an entirely innocent plaintiff and defendants who are clearly proven to have been at fault and to have done him [or her] harm." Id. at 273, 330 A.2d 355 (quoting Prosser, Law of Torts, § 52 at 319 (4th ed.1971)).
Fosgate has been applied to shift the apportionment burden to defendant in other medical malpractice cases, generally when plaintiff's injury was induced by defendant's malpractice combined with other concurrent causes not attributable to defendant doctor's alleged negligence. E.g., Lanzet v. Greenberg, 126 N.J. 168, 189, 594 A.2d 1309 (1991) (plaintiff lapsed into persistent vegetative state when surgeons failed to terminate cataract surgery to attend to plaintiff's declining vital signs); Scafidi, supra, 119 N.J. at 112-13, 574 A.2d 398 (premature birth and death ensued after defendant doctor failed to treat early labor problems); Ostrowski v. Azzara, 111 N.J. 429, 443-44, 545 A.2d 148 (1988) (toenail removal and plaintiff's failure to follow post-treatment plan resulted in bypass surgery and eventual amputation of leg); Cowan v. Doering, 111 N.J. 451, 461-62, 545 A.2d 159 (1988) (doctors treating plaintiff at hospital for sleeping pill overdose failed to guard against plaintiff's suicidal tendencies, and she jumped from second story window, sustaining injury); Bendar v. Rosen, 247 N.J.Super. 219, 232, 588 A.2d 1264 (App.Div.1991) (doctor's negligence and auto tortfeasor's negligence causally related to plaintiff's abortion); Lewis v. Preschel, 237 N.J.Super. 418, 423, 568 A.2d 106 (App.Div.1989) (doctor negligently conducted open reduction of fractured arm sustained in an auto accident).
Over the years, we have struggled with whether Fosgate should be applied to cases other than medical malpractice. When Fosgate explained that it was necessary to shift the burden to culpable defendants who subjected entirely innocent plaintiffs to "malpractice or other tortious act[s]," the Court seemed to contemplate broader application of its holding. Supra, 66 N.J. at 272, 330 A.2d 355 (emphasis added). Nevertheless, in our decisions, we disputed whether the Court intended any broader application. Compare, Bendar supra, 247 N.J.Super. at 232, 588 A.2d 1264; and Sholtis v. Am. Cyanamid Co., 238 N.J.Super. 8, 27-28, 568 A.2d 1196 (App.Div.1989); with Goodman, supra, 253 N.J.Super. at 303, 601 A.2d 766; Blanks, supra, 268 N.J.Super. at 162 n. 1, 632 A.2d 1264; and Tisdale, supra, 183 N.J.Super. at 10-11, 443 A.2d 211.
Despite the initial conflict over the scope of Fosgate, its holding has been extended subsequently to other cases besides medical malpractice based on the following two rationales that can be gleaned from the Court's analysis in Fosgate: the knowledgeable defendant and the entirely innocent plaintiff.
The knowledgeable defendant rationale is based on the realization that some defendants are in a superior position to distinguish those damages related to the claimed tortious conduct from those related to concurrent causes. Under this rationale, plaintiffs might through our liberal discovery rules be able to obtain from defendants sufficient information to apportion damages. But, it is clearly the defendant who is more knowledgeable and better able to assemble this proof. "[B]urdens of persuasion and of production should be placed on the party better able to meet those burdens." Lascari v. Bd. of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist., 116 N.J. 30, 45, 560 A.2d 1180 (1989).
The second rationale, derived from Fosgate, is that between an entirely innocent plaintiff and a culpable defendant, fairness requires that the apportionment *947 burden be placed on the culpable defendant. This is so because, without transferring the burden, plaintiff's failure of proof may result in dismissal of the case. O'Brien, supra, 361 N.J.Super. at 275, 825 A.2d 524. Dismissal for failure to precisely allocate damages is unfair when an entirely innocent plaintiff has clearly suffered some injury at the hands of a negligent defendant.
By utilizing these two rationales, we have, for example, extended Fosgate to asbestos exposure and legal malpractice cases. In these cases, the apportionment burden is shifted from plaintiffs who appear to be fault-free to culpable defendants who have more expertise or are otherwise better able to obtain or access relevant apportionment proofs. E.g., Sholtis, supra, 238 N.J.Super. at 27-28, 568 A.2d 1196 (shifting burden to defendants to demonstrate which asbestos manufactures' products caused plaintiff's asbestos-related disease); Hoppe v. Ranzini, 158 N.J.Super. 158, 171, 385 A.2d 913 (App.Div.1978) (in legal malpractice-action in which defendant lawyer contended that missing the statute of limitation was inconsequential because any judgment awarded through a timely lawsuit would have been uncollectible, shifted burden to defendant to establish uncollectibility).[1]
Despite this expansion of Fosgate, we still struggle to define the outer limits of Fosgate's reach. Most recently, in Humenik v. Gray, 350 N.J.Super. 5, 17, 794 A.2d 237 (App.Div.2002), for example, we cited Fosgate, as support for the proposition "that where there is an aggravation of a pre-existing injury resulting from the tortious acts of a defendant, an otherwise innocent plaintiff is not required to establish what portion of the eventual damages are attributable to the defendant's conduct."
Humenik, a high school sophomore, allegedly suffered Reflex Sympathetic Dystrophy or Chronic Regional Pain Syndrome from a simple wrist injury caused when defendant shoved her into a high school locker. Id. at 9, 794 A.2d 237. Defendant contended that even though his parent's Allstate Homeowner Insurance policy excluded intentional acts, the policy should cover Humenik's wrist injury because the injury was "remote, highly improbable or extraordinary," and therefore could not be considered "intentional." Ibid. At the time of trial, and without any advance notice, Allstate contended that it should only be responsible for that portion of Humenik's injury that was not reasonably expected to have resulted *948 from the intentional act. Id. at 19, 794 A.2d 237.
Our reference in Humenik to the apportionment of damages under Fosgate, Sholtis, and Bendar was designed to demonstrate that Allstate would have had the burden of proving such a claim because it sought to exclude from coverage a portion of plaintiff's injury and that it was not error for the trial judge to refuse to allow Allstate to raise such a claim, just before beginning testimony, without any prior notice. We did not intend by the discussion, in a case involving a rather atypical fact pattern and injury, to call into question the normal rule that plaintiffs must generally apportion an aggravation from a pre-existing injury in a personal injury case where defendant is not better suited than plaintiff to apportion the damages.
In Reichert's case, we cannot say that defendants Vegholm and VanKampen were any more knowledgeable or better positioned to develop aggravation proofs than was Reichert. Reichert argues, however, that the apportionment burden should have been shifted in her case partly because she was without fault, having been rear ended by Vegholm. See Lewis, supra, 237 N.J.Super. at 423, 568 A.2d 106; Hudgins v. Serrano, 186 N.J.Super. 465, 472-73, 453 A.2d 218 (App.Div.1982) (extended Fosgate to malpractice allegedly without pre-existing disease or condition); Thornton v. Gen. Motors Corp., 280 N.J.Super. 295, 301, 655 A.2d 107 (Law Div.1994) (plaintiff's automobile injury enhanced by a portion of the vehicle that intruded into passenger compartment).
We refuse to apply the entirely innocent plaintiff rationale in the instant case, however, for four reasons. First, unlike Reichert's situation, each of the cases that utilized the fault-free plaintiff doctrine also involved situations where defendants were better positioned or more knowledgeable to distinguish between those damages relating to the tortious conduct and those caused by other acts or conditions. See Scafidi, supra, 119 N.J. at 110, 574 A.2d 398; Sholtis, supra, 238 N.J.Super. at 27-28, 568 A.2d 1196; Bendar, supra, 247 N.J.Super. at 232, 588 A.2d 1264.
Second, Fosgate involved defendant doctor's malpractice in failing to diagnose plaintiff's preexisting tuberculosis. The Court found the fault-free doctrine relevant because of the difficulty separating that part of the harm caused by defendant's malpractice from plaintiff's preexisting disease and its normal consequences. Fosgate, supra, 66 N.J. at 272, 330 A.2d 355. Reichert's apportionment problem is far removed from the expertise required to separate the damages between Fosgate's preexisting disease and defendant's malpractice.
Third, the Supreme Court in Ostrowski, supra, 111 N.J. at 443-44, 545 A.2d 148, recognized that "[i]n the field of professional health care, given the difficulty of apportionment, sound public policy requires that the professional bear the burden" of apportionment. The Court in Ostrowski further noted that Tisdale, supra, 183 N.J.Super. at 8, 443 A.2d 211, which refused to shift the burden when plaintiff claimed an accident aggravated a preexisting condition, discussed the "policy in nonmedical malpractice context." Id. at 444, 545 A.2d 148. Tisdale held that Fosgate did not change the normal law that requires plaintiffs to bear the apportionment of damages burden in aggravation cases. Tisdale, supra, 183 N.J.Super. at 10-11, 443 A.2d 211.
And fourth, while Reichert contends she is fault-free in the automobile accident, she settled her dispute with the defendant dentist and proceeded to trial against the automobile defendants only on damages. We have no evidence regarding whether any carelessness of Reichert may have contributed *949 to the fall that preexisted her automobile accident.

IV.
Other cases in which we have shifted the apportionment burden recognize another rationale besides those gleaned specifically from Fosgate. These cases involve plaintiffs who have suffered so-called unitary harms caused by the concurrent wrongs of several defendants. While sometimes it is difficult to discern a unitary harm, see Feldman v. Lederle Labs., 257 N.J.Super. 163, 174, 608 A.2d 356 (App.Div.1992) (distinguishing Sholtis, by finding that the plaintiff in Feldman suffered an "incremental injury" rather than a "unitary or indivisible injury"), aff'd as modified, 132 N.J. 339, 625 A.2d 1066 (1993), the rationale has been consistently recognized. E.g., O'Brien, supra, 361 N.J.Super. at 276-77, 825 A.2d 524; James v. Chevron U.S.A., Inc., 301 N.J.Super. 512, 537, 694 A.2d 270 (App.Div.1997) (in toxic tort action for injuries from cancer, plaintiff relieved of burden of apportioning liability between manufacturers of cancer-causing products), aff'd sub nom., James v. Bessemer Processing Co., Inc., 155 N.J. 279, 714 A.2d 898 (1998); Dafler v. Raymark Indus., Inc., 259 N.J.Super. 17, 34-35, 611 A.2d 136 (App.Div.1992) (asbestos manufacturers bore burden of demonstrating the extent to which their products contributed to the lung cancer of patient, a smoker), aff'd, 132 N.J. 96, 622 A.2d 1305 (1993); Goodman, supra, 253 N.J.Super. at 305, 601 A.2d 766; Sholtis, supra, 238 N.J.Super. at 27-28, 568 A.2d 1196.
A plaintiff who suffers a unitary harm at the hands of multiple defendants, has been relieved of the burden of proving apportionment because joint liability was "the usual concomitant of concurrent negligence." E.g., Goodman, supra, 253 N.J.Super. at 306, 601 A.2d 766. Such plaintiffs may collect damages from the defendants jointly and severally unless the defendants can apportion the harm. Goodman, supra, 253 N.J.Super. at 305, 601 A.2d 766. But see N.J.S.A. 2A:15-5.3; Campione v. Soden, 150 N.J. 163, 183, 695 A.2d 1364 (1997) (noting the legislative amendment of joint and several liability and the impact of comparative negligence); and James, supra, 155 N.J. at 312, 714 A.2d 898 (noting that because the Legislature preserved joint and several liability in environmental tort actions, "in such cases the shifting of the burden of apportionment to the defendants is consonant with New Jersey law and with the Comparative Negligence Act").
In these cases, because we are dealing with a unitary harm or injury, the only method of apportioning damages is through the acts or inactions of the defendants who caused the unitary harm or injury. "Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor." Restatement (Second) of Torts § 433B(2) (1965); Dafler, supra, 259 N.J.Super. at 33, 611 A.2d 136.
We have utilized the unitary harm rationale to shift the apportionment burden to defendants in automobile crashworthy cases. E.g., Poliseno, supra, 328 N.J.Super. at 53-55, 744 A.2d 679; Green v. Gen. Motors Corp., 310 N.J.Super. 507, 528-29, 709 A.2d 205 (App.Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998); Crispin v. Volkswagenwerk AG, 248 N.J.Super. 540, 569 n. 1, 591 A.2d 966 (App.Div.), certif. denied, 126 N.J. 385, 599 A.2d 162 (1991). In these cases, we generally did not have multiple defendants, but instead had multiple causes of a unitary injury. Applying *950 the doctrine, we shifted the burden to the defendant automobile manufacturer to apportion plaintiff's unitary harm by parsing the causes of the harm.
In Poliseno, for example, the plaintiff's unitary injury, death, was allegedly caused by two concurrent causes, the hydroplaning of his vehicle into a tree (the first collision) and the defective side door beam welds allowing the tree to intrude further into the driver's side compartment (the second collision). Supra, 328 N.J.Super. at 49-51, 744 A.2d 679. In such a case, the automobile manufacturer would be responsible only for the enhanced injuries or those that occurred because of the alleged defect. Id. at 52, 744 A.2d 679. Plaintiff's burden is to show that the alleged automobile defect was a substantial factor in increasing the harm beyond that which would have resulted from the first collision alone. Ibid. Thereafter, "if the defendant seeks credit against the verdict for an injury that it claims resulted, in part, from the first collision, defendant shall have the burden of proof on that issue." Id. at 55, 744 A.2d 679.
Our analysis of these cases, also reveals the presence of a knowledgeable defendant, though that doctrine has not been specifically relied upon. It is the automobile manufacturer who is in the best position to present evidence about test protocols and any relevant crash tests that may have previously been performed. In Green, for example, the automobile manufacturer was more knowledgeable and better able to acquire the necessary information to apportion the causes of plaintiff's quadriplegia between the claimed design defect and the automobile accident. Supra, 310 N.J.Super. at 523-25, 709 A.2d 205.
Reichert claims that she suffered a unitary injury because the same parts of her body were affected by both the fall and the auto collision. We understand that defendant contests that this was the case, but for purposes of this decision, we have accepted plaintiff's argument that she suffered the same injuries to the same parts of her body from both accidents.
Nevertheless, we do not believe that this is the kind of unitary injury that is dealt with by our cases. Rather, this is closer to the "incremental injury" discussed in Feldman. Supra, 257 N.J.Super. at 174, 608 A.2d 356. Most recently, in O'Brien, supra, 361 N.J.Super. at 278, 825 A.2d 524, for example, several negligent acts by defendants responsible for plant maintenance and plant equipment caused an explosion and fire to spread throughout plaintiff's cogeneration plant. The unitary injury suffered in O'Brien was the explosion and fire that damaged large portions of the plant. Id. at 280, 825 A.2d 524. To attempt to apportion unitary injuries, a defendant must focus on the causes of the injury to attempt to convince the jury that it should not be held responsible for a portion of the unitary harm.
With Reichert, whatever injury she suffered in the fall was not identical to that caused by the auto collision, which she suffered, less than one month later. The injured parts of her body may have been identical, but whatever trauma she suffered in the collision was superimposed over trauma already suffered in the fall. Any abrasions, bruises, sprains, and strains she claims to have suffered in the automobile accident, for example, were not identical to those suffered in the fall, but were cumulative, or incremental. This was not unitary harm. Rather, unitary injuries are those harms that by their nature are indivisible, such as quadriplegia, lung cancer, and death.
Reichert cites Hill v. Macomber, 103 N.J.Super. 127, 136, 246 A.2d 731 (App. Div.1968), as support for her contention *951 that she suffered a "single, indivisible injury" warranting shifting of the apportionment burden. In Hill, two cars collided injuring their occupants, and shortly thereafter, another vehicle struck one of the disabled cars. Id. at 131-32, 246 A.2d 731. At trial, evidence apportioning injuries between the two impacts was non-existent or unhelpful. Id. at 133-34, 246 A.2d 731. Under those circumstances, we found joint and several liability. Id. at 136-37, 246 A.2d 731. See also Quagliato v. Bodner, 115 N.J.Super. 133, 138-39, 278 A.2d 500 (App.Div.1971) (applying Hill to successive accidents occurring less than three months apart).
Reichert thus argues that in successive accident situations, like hers, when there is "no ability to distinguish between the role of each accident, then the defendants [are] jointly and severally liable to the plaintiff unless they could prove their respective shares of responsibility." We reject this argument for two reasons.
First, the rationale of Hill and Quagliato was significantly undercut by the passage of the Comparative Negligence Act (L. 1987, c. 146). As explained by the Supreme Court, rather than finding the defendants in successive accidents jointly and severally responsible, the Act requires "juries to apportion damages between the successive accidents and to apportion fault among the parties responsible for each accident." Campione, supra, 150 N.J. at 184, 695 A.2d 1364; see N.J.S.A. 2A:15-5.3 (amending joint and several liability). If joint and several liability is no longer the expected result of successive accidents causing intertwined injuries, then shifting the burden of proof to defendants can not be justified solely on that basis. See James, 155 N.J. at 312, 714 A.2d 898.
Second, in Reichert's case, the injuries she suffered in the fall and subsequent accident were neither unitary nor so entwined that they were incapable of apportionment. Her own testimony, even if unsupported by her medical expert, demonstrated that her injuries were apportionable. As the trial judge found, she presented sufficient evidence to present a jury question through her own testimony regarding the aggravation of the injuries she suffered in the fall by those incurred during the automobile accident.

V.
In this case, the trial judge correctly refused to shift the burden of proof from Reichert to defendants. This is not a malpractice case. It is not a case involving an entirely innocent plaintiff and a culpable defendant who has greater knowledge of the apportionment issues or is in better position to marshal difficult apportionment proofs. It is also not a case involving a unitary injury caused by concurrent harms or the concurrent negligence of several defendants. Consequently, the burden properly remained on plaintiff.
In addition, besides arguing that her injuries were exacerbated by the automobile accident, Reichert had testified that she was symptom free after the fall. She claimed that "I didn't have problems with my hands or my head or anything before the car accident." Therefore, the first question the jury was asked on the verdict sheet was whether Reichert sustained "personal injuries or aggravation of any preexisting injury as a proximate cause of the automobile accident." (emphasis added). This question thus included Reichert's obligation to establish that she suffered some damage as a proximate cause of defendants' negligence. See Campagna v. Am. Cyanamid Co., 337 N.J.Super. 530, 549, 767 A.2d 996 (App.Div.2001).
The jury found that Reichert did not sustain any injury or aggravation of an *952 injury as a proximate cause of the automobile accident. Thus Reichert failed to establish that the automobile accident was a proximate cause of some damage to her. There was sufficient evidence present in the record for the jury to have concluded that all of Reichert's injuries were either caused by the fall that preceded the auto accident or exaggerated. Technically, therefore, the jury never faced the apportionment question, which followed on the verdict sheet.
There is no doctrine that shifts to defendant plaintiff's burden to prove that defendant's negligence was a proximate cause of some damage suffered by plaintiff. Here, Reichert failed to meet this basic burden and therefore suffered the consequencea no cause of action verdict.
Affirmed.
NOTES
[1] We also shift the liability burden of proof under Anderson v. Somberg, 67 N.J. 291, 298, 338 A.2d 1, cert. denied, 423 U.S. 929, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975). Under Anderson, we require defendants to exculpate themselves because "a no cause of action verdict against all possible defendants in a medical malpractice case would work an unacceptable injustice where an unconscious or helpless patient has suffered an injury bespeaking negligence but cannot otherwise recover damages because the plaintiff cannot establish which of the defendants were culpable." Lucia v. Monmouth Med. Ctr., 341 N.J.Super. 95, 107, 775 A.2d 97 (App.Div.), certif. denied, 170 N.J. 205, 785 A.2d 434 (2001). See Nopco Chem. Div. v. Blaw-Knox Co., 59 N.J. 274, 282-83, 281 A.2d 793 (1971) (burden shifted to defendants to establish which party in the transportation bailment chain caused damage to plaintiff's commercial drying machine). See also, Restatement (Second) of Torts § 433B(3)("Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.").