**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2411-22

HELLEN L. BAYER,

    Plaintiff-Appellant,

v.

MICHAEL ROMAN,

    Defendant-Respondent.

_____

Submitted October 2, 2024 – Decided October 25, 2024

Before Judges Mayer and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6343-19.

The Dratch Law Firm, PC, attorneys for appellant (Brian M. Dratch, of counsel and on the briefs).

Tompkins, McGuire, Wachenfeld & Barry, LLP, attorneys for respondent (Joseph K. Cobuzio, of counsel and on the brief; Kimberly D. McDougal, on the brief).

PER CURIAM

In this automobile accident case, plaintiff Hellen L. Bayer appeals from a March 17, 2023 Law Division order dismissing on summary judgment her negligence complaint against defendant Michael Roman. Because we conclude genuine issues of material fact precluded summary judgment, we reverse.

I.

We summarize the facts from the motion record in a light most favorable to plaintiff as the non-moving party. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The accident occurred in the late afternoon of November 22, 2017, near the Summit Avenue ramp on Route 17 South in Hackensack, when plaintiff's car collided with defendant's tractor trailer. Plaintiff's direction of travel was controlled by a yield sign. The parties disputed whether plaintiff yielded before proceeding.

The parties also contested the severity of the accident. At deposition, plaintiff claimed "on a scale of zero to ten" the force of the impact was "nine." She acknowledged the damage to her car was minimal and did not require repairs. Nor did the dealership assess damages when she returned the vehicle at the end of its lease term.

According to plaintiff, upon impact, her "head struck the back of the seat . . . twice, really hard." She also felt the impact in her left leg. Plaintiff assessed her overall pain level at "ten." An ambulance transported plaintiff to a local hospital, where she "c[omplained] o[f] neck pain . . . radiating to [her] left arm[] with numbness[,] tingling[, and] left shoulder pain." She denied suffering head trauma. Plaintiff advised the nurse practitioner that three months prior to the accident, she had spinal fusion surgery at L4-L5.

During discovery, plaintiff revealed her prior medical history in greater detail. In December 2014, plaintiff was diagnosed with "a broad-based left lateral disc herniation at L3-L4" and "[d]egenerative disc changes . . . at L5-S1." Between December 2014 and March 2016, plaintiff received three epidural steroid injections at L4-L5, one injection at L3-L4, and a microdiscectomy at L5-S1. In August 2017, plaintiff underwent the spinal fusion surgery noted above.

In April 2018, five months after the present accident, plaintiff was involved in another motor vehicle collision, when the car she was driving was struck from behind by a car traveling about forty to fifty miles per hour. Upon impact, plaintiff struck her head on the seat back. Plaintiff was treated at the

hospital and "complain[ed] of headache, neck pain, back pain, [and] new [right]-sided pain and tingling."

Thereafter, plaintiff was evaluated by Michael A. Meese, M.D., an orthopedic surgeon. In the history section of his April 16, 2018 report, Dr. Meese noted plaintiff "had been under care for treatment of neck and back injuries from a prior motor vehicle accident and . . . this most recent accident . . . exacerbated the pain in the neck and low back." Dr. Meese diagnosed plaintiff with "[a]cute exacerbation of cervical and lumbar radiculopathy," and herniated lumbar and cervical discs. Dr. Meese prescribed pain medication and referred plaintiff to physical therapy.

Between May and October 2018, plaintiff treated with Robert J. Federman, D.D.S., who diagnosed her with temporomandibular joint (TMJ) syndrome. Dr. Federman's treatment included a TMJ orthotic followed by arthroscopic surgery. In his November 30, 2020 report, Dr. Federman noted plaintiff's "TMJ symptoms were improved," but her "prognosis remain[ed] guarded." Although "the treatment rendered by [his] office was medically necessary," Dr. Federman opined plaintiff's injury was permanent. Noting plaintiff "had no preexisting history of dental injuries or [TMJ] dysfunction," Dr. Federman concluded: "In all medical probability, the [presumably 2017]

4

motor vehicle accident was the competent producing cause for all injuries to the [TMJ]s and related teeth."

From May 2019 to April 2020, plaintiff treated with Marc A. Cohen, M.D., F.A.A.O.S., F.A.C.S. In his September 12, 2020 report, Dr. Cohen summarized his review of plaintiff's prior medical records, including her surgical reports, EMG reports, and MRI reports and films. He noted plaintiff "related her problem to the motor vehicle accident [on] November 22, 2017." In August 2019, Dr. Cohen referred plaintiff for "open cervical discectomy and fusion stabilization" at C5-6 and C7.

In the Polk[1] analysis section of his report, Dr. Cohen noted plaintiff's 2017 surgery. He opined plaintiff "had an aggravation and worsening of her pre[]existing lumbar fusion surgery after the [presumably 2017] motor vehicle accident and now sustained a new injury of juxta positional instability at the L4-5 level."

Plaintiff designated Drs. Federman and Cohen her expert witnesses. Neither doctor's report referenced the April 2018 accident. In her September 2019 complaint, plaintiff only claimed personal injuries for the November 22,

---

[1] Polk v. Daconceicao, 268 N.J. Super. 568 (App. Div. 1993).

A-2411-22

2017 accident. Plaintiff did not file a lawsuit regarding the April 2018 collision.

Defendant did not retain a medical expert. Instead, defendant served the thirty-nine-page report of his accident reconstructionist expert, John C. Scott, and the sixty-four-page report of his biochemical engineer, Richard A. Bandstra, Ph.D.

Based on his analysis, Scott opined: "The only contributing factor in this accident event was [plaintiff]'s failure to obey the prevailing traffic laws by not keeping proper lookout and not yielding to . . . [defendant's] tractor." He concluded the severity of the impact between the vehicles "was consistent with the vehicles traveling at a velocity difference of less than [five miles per hour]." Further, he opined the impact between the vehicles "resulted in no vehicle rotation and would have produced a g-force acting on [plaintiff's vehicle] of less than -0.9g."

Bandstra made similar g-force findings, commenting: "The accelerations experienced by [plaintiff] during this incident were within the range of non-injurious limits of general human tolerance and the tolerance levels of [plaintiff] specifically based upon a biomechanical engineering analysis of her medical records and testimony." He concluded: "From both an

6

automotive engineering and a biomechanical engineering perspective, [plaintiff]'s claims of injury or enhancement of any pre[]existing condition resulting from the November 22, 2017 incident are inconsistent with the minimal severity of this incident."

At the close of discovery, defendant moved for summary judgment, asserting the record was devoid of any credible evidence that he caused the accident. Rather, his expert reports demonstrated plaintiff's "injuries could not have occurred based upon the forces that resulted from this type of accident." Defendant further argued plaintiff's experts failed to apportion the injuries between the present accident and her preexisting condition, or the present accident and subsequent accidents. He also claimed plaintiff's experts rendered net opinions.

Following argument, the motion court issued a written statement of reasons and memorializing order. Noting the extent of plaintiff's injuries were not in dispute, the court framed the issue before it as "whether plaintiff has raised a question of material fact as to whether these injuries were caused by the [present] accident."

Finding the record revealed disparate accounts as to the location of the impact on the roadway and whether plaintiff yielded to traffic, the court

7

declined to "conclude as a matter of law that she failed to yield as she entered the highway." Nor was the court convinced plaintiff's experts' reports contained "baseless or speculative net opinions." Although the court noted neither report referenced plaintiff's subsequent April 2018 accident, it found defendant could challenge the sufficiency of the experts' opinions on cross-examination.

However, the court was persuaded plaintiff was unable to prove the present accident was the proximate cause of her injuries. To support its decision, the court cited the uncontested opinion of defendant's biomechanical expert "that the forces and injury mechanisms required to cause or enhance plaintiff's injuries were not present in the November 22, 2017[] accident." Further, the vehicle that struck plaintiff's car during her April 2018 accident "was moving at a much greater speed." Noting plaintiff's experts relied on medical evaluations performed after the second accident, the court found the same experts "fail[ed] to explain why the injuries could not have been caused by the later accident." Recognizing the present matter was not a verbal threshold case, see N.J.S.A. 39:6A-8(a), the court nonetheless concluded a Polk analysis was required to prove causation at this stage of the litigation.

The court therefore granted summary judgment "because no rational fact[]finder could find in [p]laintiff's favor on the issue of causation."

On appeal, plaintiff challenges the motion court's decision on two grounds. She maintains the opinions of her experts "raise issues of material fact as to causation of her injuries." She also argues the court erroneously concluded "defendant's 'biomechanical' expert demonstrated that there was no issue of material fact as to causation." In his responding brief, defendant urges us to uphold the order, but maintains the court erroneously determined the opinions of plaintiff's experts were not net.

II.

We review the trial court's grant of summary judgment de novo. Conforti v. County of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the trial court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff, as the non-moving party, nonetheless entitle defendant to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill, 142 N.J. at 540; see also R. 4:46-2(c). We owe no deference to the trial court's legal analysis. The Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

As a preliminary matter, we decline defendant's invitation to revisit the court's conclusion that plaintiff's experts did not render inadmissible net opinions. Defendant did not cross-appeal on this issue and his reliance on our decision in Chimes v. Oritani Motor Hotel, Inc., 195 N.J. Super. 435 (App. Div. 1984), is misplaced. Without filing a cross-appeal, a respondent may argue "any point on the appeal to sustain the trial court's judgment." Id. at 443 (emphasis added). Here, however, defendant's argument challenges an adverse finding and, as such, his contention should have been asserted within a separate cross-appeal. See Bogey's Trucking & Paving, Inc. v. Indian Harbor Ins. Co., 395 N.J. Super. 59, 64 n.3 (App. Div. 2007) ("This is not an alternative argument for affirmance that can be raised without cross-appeal.").

We have, however, considered defendant's argument that plaintiff's experts failed to apportion her injuries among the two accidents and her preexisting condition and, as such, summary judgment was appropriate here. We disagree.

As a general rule, "the plaintiff bears the burden of proving the defendant's negligence and that such negligence was the proximate cause of the plaintiff's injury." Fernandes v. DAR Dev. Corp., 222 N.J. 390, 404 (2015). In meeting that burden, a plaintiff seeking recovery for an injury

10

caused by successive accidents must apportion damages between each responsible party. See Reichert v. Vegholm, 366 N.J. Super. 209, 214 (App. Div. 2004) (acknowledging "[t]he general rule does not change when [the] plaintiff's injuries or conditions are aggravated by a subsequent accident"). That is because a defendant's responsibility is limited to the harm he or she caused. Id. at 213.

The burden to allocate damages is placed on "the party in the best position to present evidence." Id. at 214. "In the normal prior or post-personal injury aggravation claim," that party is the plaintiff. Ibid. (quoting O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am., 361 N.J. Super. 264, 274 (App. Div. 2003)). Accordingly, in successive accident cases where a plaintiff seeks to recover from the original tortfeasor, the plaintiff must provide comparative medical evidence "to isolate the physician's diagnosis of the injury or injuries" attributable to that tortfeasor's negligent conduct. See Davidson v. Slater, 189 N.J. 166, 185-86 (2007).

However, whether a claimed injury is an aggravation of a preexisting injury, although possibly relevant on the issue of causation at the time of trial, is not an element of proof plaintiff must satisfy at the summary judgment stage. See Hardison v. King, 381 N.J. Super. 129, 136-37 (App. Div. 2005).

Thus, where an aggravation of injuries is asserted, a plaintiff's own testimony may satisfy the burden of establishing "sufficient evidence to present a jury question." Reichert, 366 N.J. Super. at 225.

In Reichert, the plaintiff sustained injuries to her neck, arms, and knee after a fall. Id. at 212. Almost a month later, the plaintiff suffered injuries to the same body areas in an automobile collision. Ibid. Plaintiff's medical expert was unable to apportion the plaintiff's damages. Ibid. The jury returned a no cause verdict on the plaintiff's claim against the tortfeasor in the automobile incident, finding the plaintiff "did not sustain either an injury or an aggravation of any injury as a proximate cause of the automobile accident." Ibid. On appeal, we rejected the plaintiff's argument that the defendants should have borne the burden of apportioning damages. Ibid.

Of relevance to the present matter, however, we recognized

> the injuries [the plaintiff] suffered in the fall and subsequent accident were neither unitary nor so entwined that they were incapable of apportionment. Her own testimony, even if unsupported by her medical expert, demonstrated that her injuries were apportionable. As the trial judge found [in denying the defendant's Rule 4:37-2(b) dismissal motion], she presented sufficient evidence to present a jury question through her own testimony regarding the aggravation of the injuries she suffered in the fall by those incurred during the automobile accident.

[Id. at 224-25 (emphasis added).]

Applying these principles here, we conclude the motion court erroneously determined a Polk analysis was required to defeat summary judgment. Plaintiff alleges her injuries were attributable to the November 22, 2017 accident and did not worsen after the April 2018 collision. She may testify at trial about the injuries allegedly sustained in the November 22, 2017 accident and the extent to which both accidents, if at all, exacerbated her preexisting condition. Plaintiff retains the burden of proving her injuries were attributable to the first accident. See Reichert, 366 N.J. Super. at 214. A jury should decide the weight to ascribe the omission of the April 2018 accident from her experts' reports.

Further, we agree with plaintiff that genuine issues of material fact precluded summary judgment on medical causation. During her deposition, plaintiff testified the force of the impact was "nine" "on a scale of zero to ten," causing her head to strike the seatback "twice, really hard." Through his experts, defendant countered the force was minimal and caused little damage to plaintiff's vehicle. That plaintiff did not proffer a biomechanical or accident reconstructionist expert may be considered by the jury when assessing plaintiff's proofs, including her testimony. In our view, the facts are not so

13

"one-sided" that defendant is entitled to prevail as a matter of law. See Brill, 142 N.J. at 540.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION